ALLEGANY COUNTY. — HON. C. A. FARNUM, SURRO-
GATE.—August, 1885.

## CANFIELD *v.* CRANDALL.

*In the matter of the application for the revocation of
of probate of the will of* JOHN CRANDALL, *deceased.*

Upon an application, made under Code Civ. Pro., § 2647, to revoke the
probate of a will, on the ground of the existence of a later will which
was propounded accordingly, it appearing that the latter instrument
was a codicil to the former,—

*Held,* that the petition for revocation should be denied, and the codicil
being duly proved, be admitted as such.

A disposition made by a will is revoked by a subsequently executed testa-
mentary instrument, making a provision inconsistent therewith,
although the latter proves ineffectual in consequence of the inability
of the designated beneficiary to take thereunder.

Testator, who died March 20th, 1884, leaving a widow, brother and
sister, him surviving, by his will, executed April 2nd, 1871, gave all
his property, real and personal, to his wife for life, in lieu of dower ;
authorized the executors to sell the real property whenever they
deemed best for the interests of the estate ; and, after the wife's death,
gave and bequeathed one half and one fourth of his property, respect-
ively, to the " E." and " T." societies, corporations formed under the
act of 1848 (ch. 319), and the remaining one fourth to the " M."
society, a foreign corporation. In January, 1884, within two months
before his death, he executed a codicil, modifying the will by provid-
ing that the three societies should share equally in the remainder.
It was contended, in behalf of the domestic corporations, that the
provisions of the will, in their favor, must stand, the codicil being a
nullity, as to them, because the testator died within two months after
its execution.—*Held,*

1. That the " M." society took one third of the real and personal
estate, remaining after the life use,—the circumstance that such cor-
poration thus enjoyed a privilege denied to the others constituting an
argument to be addressed to the legislature, and not to the court.

2. That the gifts of the will, to the " E." and " T." societies, were
revoked by the provisions concerning them, contained in the codicil ;
which failing, under the statute, by reason of testator's death within
two months after the execution of the latter instrument, those
societies took nothing.

3. That, the will working no equitable conversion of the realty, the remainder in two thirds thereof was not subject to distribution ; while two thirds of the personal estate, remaining after the life use of the widow, belonged to her and the brother and sister, in the proportions prescribed by the statute, in case of intestacy.

CONSTRUCTION of will and codicil on application for revocation of probate. The facts appear sufficiently in the opinion.

HAMILTON WARD, *for petitioners.*

JAMES H. STEVENS, *for executors.*

L. A. PLATTS, *and* L. E. LIVERMORE, *for societies.*

THE SURROGATE.—John Crandall, on the 2nd day of April, 1871, while a resident of this county, executed his last will and testament, whereby he gave : " First.— To my beloved wife, Eliza M. Crandall, all my property, both real and personal, during her natural life, in lieu of right of dower ; and I hereby authorize my executors to sell my real estate, whenever in their judgment it shall be best for the interests of the estate. Second.—After the death of my wife, I give and bequeath one half of my property to the Seventh Day Baptist Education Society, one fourth to the American Sabbath Tract Society, and one fourth to the Seventh Day Baptist Missionary Society." He also nominated Ezekiel R. Crandall and his wife, Eliza, to be executors of his will.

The testator died March 20th, 1884, then being a resident of this county, and leaving real property therein of the value of $3,000, and personal property worth $4,000. His will was duly admitted to probate in this court, August 8th, 1884, and the executors

named in the will were duly appointed by the Surrogate. Within a year thereafter, Christopher Crandall, a brother, and Mary Canfield, a sister of the deceased, being his only next of kin and heirs at law, filed a petition in this court, in pursuance of §§ 2647–2653 of the Code of Civil Procedure, alleging that the said John Crandall died leaving a will, duly executed, made since the one admitted to probate, and praying that the probate of said will be revoked, and that the later will be admitted to probate.

A citation thereupon was duly issued, and it has been served upon all the devisees, legatees and executors, and they have appeared in this court by counsel. Upon the hearing, it was found that in January, 1884, within two months of the time of the death of the testator, he made a codicil to his will, as follows : " Codicil to my last will and testament, bearing date the 2nd day of April, 1871. In this codicil I hereby expressly confirm my former will, excepting so far as the disposition of my property is changed by this codicil, which change refers to the second item only of said will, changing it so as to read : after the death of my wife, I give and bequeath one third of my property to the Seventh Day Baptist Education Society, and one third to the Seventh Day Baptist Tract Society, and one third to the Seventh Day Baptist Missionary Society. In witness whereof I have hereunto set my hand," etc.

It appearing that the supposed later will is a codicil, the petition asking for the revocation of the probate of the will is denied, and the codicil to such will is admitted to probate. The duties of the Surrogate

would end in this proceeding at the present time, only that all the parties to the proceeding have requested and urged that the Surrogate should construe the will and codicil, the same as if this were the judicial settlement of the accounts of the executors. There being no infants interested in the estate, and as it may very much lessen the difficulties of the executors in the performance of their duties, I have consented to pass upon the various points raised by counsel.

I find that the name, the " Seventh Day Baptist Tract Society" in the codicil is an error, and should be the American Sabbath Tract Society, it being the intention of the testator to make the gift to such society. By evidence admitted outside of the will, it appears there is no society of the name of the Seventh Day Baptist Tract Society, but the American Sabbath Tract Society is managed by persons holding the beliefs and doctrines of the " Seventh Day" Baptist people, and it can be very readily seen how the testator fell into the error in writing the name. Such a misnomer will not defeat the intentions of the testator (Wigram on Wills, Prop. V.; Lefevre v. Lefevre, 59 *N. Y.*, 434, 440).

The Seventh Day Baptist Education Society and the said American Sabbath Tract Society are domestic corporations, duly incorporated and organized under chapter 319 of the Laws of the State of New York, passed April 12th, 1848. The Seventh Day Baptist Missionary Society is a foreign corporation, and was duly incorporated in the year 1880, under and in pursuance of the laws of the State of Rhode Island, and

is authorized by its charter to take and hold real and personal estate to an amount not exceeding $100,000. It has not yet received that amount.

The petitioners contend that the gifts to the three societies are void under the sixth section of chapter 319 of the Laws of 1848, providing that "no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator." Were it not for the statute in question, and chapter 360 of the Laws of 1860, a competent testator might dispose of all his property in such manner as he desired by will. The legislature has deemed it wise that the natural right of man to dispose of his property by will should be abridged in certain cases, one being that a gift by will, to a society incorporated under the act of 1848, must be made at least two months before his decease, and the other that a person having a husband, wife, child, or parent, shall give by his will to any "benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, not more than one half of his or her estate, after the payment of his or her debts." The reasons for such legislation are given in Hollis v. Drew Theol. Seminary (95 *N. Y.*, 166, 172), and in numerous cases preceding that.

Counsel for the three societies urges that § 6 does not affect the gift to them, claiming that more than two months elapsed after such devises and bequests were made, before the death of the testator. It is clear that the section cited does not prohibit the Seventh Day Baptist Missionary Society from taking

under the will or codicil, no matter how brief a period of time elapsed between the execution of the will and the death of the testator. The act of 1848 applies only to " any corporation formed under this act," *i. e.*, chapter 319 of the laws of 1848. The Missionary Society was not formed under this act but under an act of another state, which act contains no such prohibition. If I had any doubts of the correctness of this conclusion, Hollis v. Drew Theol. Seminary (*supra*), would settle them at once. It is true, as urged by counsel for the petitioners, that such construction gives a foreign corporation rights and privileges not accorded to certain corporations of our own. The legislature has power to change this, should it see fit; the courts have not.

Then we are brought to the question: Do the Seventh Day Baptist Education Society and the American Sabbath Tract Society take under a will not made and executed at least two months before the death of the testator? The testator by his will, executed in 1871, after the life use of all his property by his widow, divided it into four shares, two of which he gave to the Seventh Day Baptist Education Society, one to the American Sabbath Tract Society, and the other to the Seventh Day Baptist Missionary Society. Had this instrument remained unaltered down to the time of his death, each of the three societies named would have received this property in the proportions named, subject to abatement, however, so that the three societies did not receive more than one half of his estate after the payment of his debts. One month and twenty-eight days before his death, and while

thoroughly competent to revoke or modify these de-
vises and bequests, he saw fit to change them. The
instrument executed many years before did not then
express his wishes and will;. his property was not
disposed of as he desired it to go; his wish then was
that each of such societies should receive one third of
the residuum of his estate, after the life use by his
widow; they should share equally, and not as he
had said thirteen years before. He then expressed
his wishes by an instrument in writing, duly executed
in accordance with the laws of our State. This is the
last wish and will made by him, of which the law can
take notice.

It is conceded by the learned counsel for the socie-
ties that this last legal declaration, called a codicil to
the testator's will, was and is a valid instrument as to
the Seventh Day Baptist Missionary Society, and that
such society takes by it one third of the residuum of
the estate after such life use; that it has life and
force as to this society, but he urges it is a nullity as
to the other two societies, and has no force or power
to change the original will and intent of the testator
as to the New York State societies. His view is that
the gifts to the two societies are not, and cannot be
altered by the codicil, unless the testator live two
months after the execution of it; in other words, if
the testator make a new disposition of his estate, and
intend thereby to modify or revoke certain provisions
of the earlier will, such cannot be its effect if the new
provisions fail. In part I hold with him. As to the
Rhode Island society, it is a good gift. As to the two
societies incorporated under the act of 1848, it fails,

for the reason that the legislature has said : "No such devise or bequest (to any corporation formed under that act) shall be valid, in any will which shall not have been executed at least two months before the death of the testator."

The will of the testator consists of the two instruments made by him, one executed in 1871, and the other, designated a codicil, executed in 1884. The two papers together expressed his wishes, and made his last will and testament. His wishes, as expressed in such last formal manner were, that each of the three societies should receive one third of the residuum of his estate. Such expression was made at a time when he was competent to say how he wanted his property to go after his death.. It was in a different manner than he indicated in 1871. He annulled the provisions in his declaration of 1871, and substituted others; by such change he revoked the gifts to the three societies, made in 1871, and willed that they receive in different proportions. One of these wishes can be respected; the other two must be denied. A statute positive in its terms prevents the two societies formed under the act of 1848 from taking, unless the will giving them the property was executed at least two months before the testator's death. If, at the time the testator made the codicil to his will, he had made a new will, making no mention of the former will, but which contained precisely the same terms and conditions as are found in the will of 1871, as modified by the codicil of 1884, I think very few would contend that the provisions of the will of 1871 were not revoked by the later instrument. That the later instrument pro-

ducing the same result is called a codicil ought not to change its legal status. The whole instruments taken together are the will of the testator: the last will and testament of the testator were made within two months of the time of his decease. Frequently it has been held that the republication of a will by a codicil makes the will speak from the date of the codicil (Kip v. Van Cortland, 7 *Hill*, 346 ; Brown v. Clark, 77 *N. Y.*, 375 ; 1 W'ms. on Ex'rs, 216). The statutes, 2 R. S., 68, § 71, and Code Civ. Pro., § 2514, subd. 4, recognize the term " will" to include a " codicil."

2 R. S., 64, § 42, provides that no will in writing, except in certain cases not necessary to notice, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed. It is a well known rule, that a revocation may be implied from the fact that a later will is inconsistent with the one theretofore executed. The section of the statute above cited recognizes the right to revoke or alter a will, or certain provisions of it, by a later instrument executed with the same formalities with which the will itself was executed. There is nothing in it which limits it, or hints that any or all of its provisions shall become operative, but simply that the statutory formalities shall be observed. Of course it is implied that such later instrument shall be made by a competent testator. The testator, John Crandall, was competent to revoke or modify his earlier will at the time he executed the

codicil, but a devise or bequest to certain societies could not become operative on account of the statutory prohibition.

Chancellor KENT, in Walton v. Walton (*Johns. Ch.*, 269), has said: " Inoperative conveyances, which have failed for want of completion, or from incapacity in the grantee to take, have, in some cases, been held a revocation of a will at law. Lord KENYON observed, in Shove v. Pincke (5 *Term Rep.*, 124), that a conveyance, inadequate for the purpose intended, would amount, in point of law, to a revocation, if it showed an intention to revoke the will; and Lord HARDWICKE and Lord Ch. J. ALVANLEY, sitting in equity, have approved of this construction, as those acts imported an intention in the testator to revoke." See, also, 2 Greenl. Ev., § 687; 4 Kent, 528, 529; 1 Jarm. on Wills (R. & T. ed.), 329–335. The cases are not all consistent with each other, but from an examination of many authorities the rule seems to be that, if the later disposition fail, not from the infirmity of the instrument itself, but from the incapacity of the beneficiary to receive, the prior disposition is revoked.

By the will of the testator, his widow takes the use of all of his property, real and personal, during her life. Upon her death, the Seventh Day Baptist Missionary Society takes one third of his real and personal estate ; the remaining two thirds, after the death of the widow, remain undisposed of, and this court must determine to whom this personal property shall be distributed. 2 R. S., 96, § 75, subd. 3, provides that, where the deceased left a will, the surplus

of personal estate remaining after the payment of debts and legacies, if not bequeathed, shall be distributed, in case the deceased leave a widow and a brother or sister, and no parent or descendant, by giving one half to the widow and the whole of the residue, where it does not exceed $2,000; if the residue exceed that sum, the widow shall take, in addition to the one half, $2,000, and the remainder shall be distributed to the brothers and sisters.

It becomes necessary to ascertain the nature of the gift to the societies, in order to determine the questions raised. If the testator by his will has worked an equitable conversion of the real estate, so that it was his intention to give the price of the real estate to each one of the societies, it will, like money, be part of his personal estate, and must be distributed accordingly; but if it is not converted, and the society takes as a tenant in common of the real estate, it will descend to the heirs at law. The testator gave his widow all his property, real and personal, during his life—this means the use and income thereof; of real property, the rents, produce or profits of it. He also gave his executors a discretionary power to sell, in the following words: " I hereby authorize my executors to sell my real estate, whenever, in their judgment, it shall be best for the interests of the estate." An absolute direction to sell real estate, even if the time of sale be discretionary, with directions to distribute the proceeds, is an equitable conversion of the property (Martin v. Sherman, 2 *Sandf. Ch.*, 341). So where the testator authorizes his executors to sell real estate, and it is

apparent from the general provisions of the will that he intended a sale, the estate will be deemed personal, under the doctrine of equitable conversion, though the power of sale is not in terms absolute (Phelps' Ex'r v. Pond, 23 *N. Y.*, 69; Power v. Cassidy, 79 *id.*, 602, 914; Graham v. Livingston, 7 *Hun*, 11).

But, to cause a conversion of real estate to personal, the will should definitely and decisively fix upon the land the quality of money. A will which merely "authorizes and empowers" an executor to sell is not imperative (Harris v. Clark, 7 *N. Y.*, 242, 260; McCarty v. Deming, 4 *Lans.*, 440, 442; White v. Howard, 46 *N. Y.*, 144, 162; Matter of Fox, 52 *id.*, 530, 536). It has been held that, if the object for which the conversion of real into personal property is directed fail, either in whole or in part, so that the proceeds are not legally or effectually disposed of by the testator, there is a resulting trust *pro tanto* in favor of the heir, and that there is not an equitable conversion (Hawley v. James, 7 *Paige*, 213; McCarty v. Terry, 7 *Lans.*, 239; Betts v. Betts, 4 *Abb. N. C.*, 317, 419; but see 10 *id.*, 274).

There is nothing in this will, indicating that the executors should sell in any event, nor was it necessary that a sale should be made to carry out its provisions. The widow had the use of all the property during her life, and upon her death the three societies would take the residue. The wishes of the testator could as well be carried out without a sale, as with. For convenience, he gave the executors a power in trust. The title to the real estate passed to

the devisee competent to take, subject, however, to the execution of the power in the executors to sell, should they see fit to exercise it. In case of sale, the fund realized would be treated as real property. Hence I hold that two thirds of the real estate, after its life use by the widow, remains as realty, and is not subject to distribution. Upon the death of the widow, and after the payment of debts and expenses of administration and the commissions of the executors, one third of the residue of the personal estate shall be paid to the Seventh Day Baptist Missionary Society; the other two thirds, undisposed of, shall be distributed under 2 R. S., 95, § 75, wholly to the widow if the sum does not exceed $2,000; if it exceed that sum, she shall take one half of the residue, and $2,000 in addition, and the remainder shall go to the next of kin of the deceased, being the petitioners herein. There is nothing in the will barring the widow from sharing in the distribution (Hatch v. Bassett, 52 *N. Y.*, 359, 362; Edsall v. Waterbury, 2 *Redf.*, 48, 51; Lefevre v. Lefevre, 59 *N. Y.*, 434, 447). The fact that the widow cannot now come into possession of her distributive share does not affect her right to receive it (Sweet v. Chase, 2 *N. Y.*, 73).

Fifty dollars costs shall be allowed to the petitioners, and a like sum of costs to the executors, to be paid out of the estate by the executors, and a decree shall be entered accordingly.