## *In re* BENEDICT'S WILL.

### *(Surrogate's Court, Chenango County.* March, 1889.)

CHARITIES—VALIDITY OF DEVISE.

> Laws N. Y. 1848, c. 319, § 6, provides that "any corporation formed under this act shall be capable of taking, holding, or receiving any property, * * * by virtue of any devise or bequest, * * * provided * * * no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator." *Held,* that devises made within two months of testator's death, to societies incorporated under said law, and under laws which gave them power to take by will, "subject to the provisions of law relating to devises and bequests," were invalid, though in the will revoked by said will similar devises had been made to the societies.

Proceedings for the probate of the will of Fanny S. Benedict, deceased.

*Stephen Holden,* for executor. *Bartlett, Wilson & Hayden,* for the American Female Guardian Society and Home for the Friendless. *Austin Abbott* and *James McG. Smith,* for the American Home Missionary Society, the American Missionary Association, and the American Board of Commissions for Foreign Missions. *F. C. Dart,* for Arnold G. Davis. *I. S. & H. D. Newton,* for the Susquehanna Valley Home and the First Congregational Church of Sherburne. *A. A. Davis,* for infants. *Geo. F. Yeomans,* for contestants.

JENKS, S. The probate of the will is not contested, but the contestants, by their answer, put in issue the validity of the bequests to the American Missionary Association, the American Home Missionary Society, the American Board of Commissions for Foreign Missions, the Susquehanna Valley Home, the First Congregational Church of Sherburne, N. Y., and the American Female Guardian Society, and ask for a determination of such issue, upon rendering the decree admitting the will to probate, as provided by section 2624

of the Code. The will was executed on the 5th day of May, 1888, and the testatrix died on the 1st day of June thereafter, leaving no child or parent her surviving. It was conceded by the contestants upon the trial that the bequests to each of the corporation legatees were valid, excepting those to the American Home Missionary Society, the Susquehanna Valley Home, and the American Female Guardian Society, and that the bequests to each of those corporations were invalid under the provisions of section 6, c. 319, Laws 1848, the testatrix having died within two months after the execution of her will. Section 6 of said act provides that "any corporation formed under this act shall be capable of taking, holding, or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatsoever, the clear annual income of which devise or bequest shall not exceed the sum of $10,000, provided no person leaving a wife or child or parent shall devise or bequeath to such institution or corporation more than one-fourth of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one-fourth, and no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator." The Susquehanna Valley Home, of Binghamton, N. Y., was incorporated "for benevolent and charitable purposes" under chapter 319, Laws 1848, by filing a certificate duly executed and approved by a justice of the supreme court, in the office of the secretary of state, on the 17th day of March, 1869. The American Female Guardian Society was incorporated by special act of the legislature, (chapter 244, Laws 1849.) Section 4 of the act provides that this corporation "may receive by gift or devise in the same manner, and subject to the same restrictions, as provided in the general law for the incorporation of religious and benevolent associations." Section 6 of the act of 1848 is therefore applicable to this corporation, and it was so held in *Lefevre* v. *Lefevre*, 59 N. Y. 434. The American Home Missionary Society was incorporated by chapter 21, Laws 1871. Section 2 of the act is as follows: "Sec. 2. Said corporation shall be capable of taking and holding, by purchase, gift, grant, devise, or bequest, subject to the provisions of law relating to devises and bequests by last will and testament, real and personal property, and of granting or otherwise disposing of the same for said purpose." This bequest is in form to the treasurer of the society, but is "to be applied to the charitable uses and purposes of said society and under its direction." It is therefore, in legal effect, a bequest to the society. *Effray* v. *Asylum*, 5 Redf. Sur. 557, and cases cited. In *Kerr* v. *Dougherty*, 79 N. Y. 327, the validity of a bequest to the Union Theological Seminary was in issue. In the amendment to its act of incorporation, passed in 1870, it was authorized to take and hold, "by gift, grant, or devise, or otherwise, subject to all the provisions of law relating to devises and bequests by last will and testament." It was held that the corporation was subject to the provisions of the general act of 1848, and, the will having been executed within a month of the testator's death, the bequest was declared void. It will be observed that the restriction clause in the charter of the American Home Missionary Society, empowering it to take by gift, etc., is identical with that in the charter of the Union Theological Seminary, excepting the omission of the word "all." It is submitted by the learned counsel for the American Home Missionary Society whether the omission of the word does not express a legislative intent to limit this society to the restrictions contained in the statute of wills, and exempting it from the provisions of the act of 1848. I think the omission of the word "all" has no such significance, and that it does not restrict or limit its application to any particular statute; if so, how can we determine what particular statute the legislature intended to include or exclude? The word "all" is omitted in a similar clause in the charter of the Baptist Missionary Convention of the state of New York, (chapter 41, Laws 1862;) yet it was held in

*Stephenson* v. *Short*, 92 N. Y. 433, 445, that section 6 of the act of 1848 applied to a bequest made to it by will executed within two months of the death of the testator, and that the bequest was invalid, although the testator left no wife, child, or parent. It seems very clear that each of these corporations are within the restriction imposed by the statute of 1848. But it is claimed by the counsel for each of said corporations that, if it should be so held, they are still entitled to take the same amounts under a former will executed in 1883. The due execution of this former will was proved on the hearing, and read in evidence. The will of 1883 gave all the estate, real and personal, to Mary P. Benedict, and named her as executrix. It further provided that, in case she should not be living at the time of the death of the testatrix, Henry T. Dunham should be the executor, and take all the estate in trust for the purpose of converting it into money and paying the legacies. Besides legacies to the other corporations named, the sum of $2,000 was directed to be paid to the treasurer of the Home Missionary Society, and $1,000 to the Susquehanna Valley Home. Various individual bequests were made, and the residue of her estate was given to the American Female Guardian Society. A codicil executed in March, 1886, revokes an individual legacy of $1,000. The will of 1888 omits the legacy to Mary P. Benedict, and gives the entire estate in trust to Henry T. Dunham to convert the estate into money, pay legacies of like amount to each of the corporations named in the will of 1883, and to each person named therein, excepting the one cut off by the codicil, and also names several additional legatees, the personal legacies in all amounting to $3,500 more than were contained in the former will. This will also makes the Female Guardian Society residuary legatee. The provision in the statute of 1848 that "no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator" was made to guard against improvident testamentary disposition of property by persons *in extremis* in derogation of the claims of near relatives. Will. Eq. Jur. 576; *Beekman* v. *People*, 27 Barb. 305.

The learned counsel representing these corporations claim that the provision in the act of 1848 should not render these bequests invalid, because it appears from the will of 1883 that the bequests were not made to them *in extremis*, through fear, weakness, or supernatural influence, but were re-enactments of precisely the same bequests, made with deliberation and in full health several years before. It must be conceded that the apprehended danger that prompted this legislative restraint upon testamentary disposition does not exist in this case; but does it follow that the maxim, *cessante ratione legis cessat ipsa lex*, can be applied to the defeat of a positive statute? This maxim may be considered in the application of rules of law to a given case, but should not be construed literally. The statute applies to all bequests made within two months before death. It makes no exception. It confers no discretion upon the court. It gives no power to investigate the circumstances surrounding the testator when the will was executed, to determine whether "the reason of the law" had ceased to exist. If this was a legitimate subject of inquiry, it should not be confined to an examination of former wills to see if similar provisions had not been previously made, but the state of the testator's mind and all her surroundings could be proved to show that "the reason of the rule" did not exist. Such an issue has never been sanctioned or raised in any reported case since the enactment of this statute. Section 3091 of the proposed Civil Code, as reported in 1884, states this maxim as follows: "When the reason of a rule ceases, so should the rule itself;" but section 3090 says: "The maxims of jurisprudence hereafter set forth are intended, not to qualify any of the foregoing provisions of this Code, but to aid in their just application." Neither should this maxim be allowed "to qualify" the provisions of the statute of 1848, but only to aid in its application; it should not be used to nullify it. It was the rule of the common law, and

made a part of the Revised Statutes, that the marriage of a woman operated as an absolute revocation of her prior will. The reason of the rule, as stated by Lord Chancellor THURLOW, in *Hodsden* v. *Lloyd*, 2 Brown, Ch. 534, was that "it is contrary to the nature of the instrument, which must be ambulatory during the life of the testatrix, and, as by the marriage she disables herself from making any other will, this instrument ceases to be that sort, and must be void." In *Brown* v. *Clark*, 77 N. Y. 369, it was claimed by the contestants that the testamentary capacity conferred upon married women by subsequent statutes took away the "reason of the rule of the common law, and that upon the maxim, *cessante ratione legis cessat lex ipse*, the rule should be deemed to be abrogated, but it was held that "the courts cannot dispense with a statutory rule because it may appear that the policy upon which it was established had ceased." It is also argued in behalf of these corporations that the later will, although in terms revoking the will of 1883, in fact re-enacts and reaffirms the bequests contained in the former will; that because the re-enacted gift failed to become effectual on account of the death of the testator within two months after the execution of the last will, the revocatory clause did not take effect; and that the will of 1883 can be admitted to probate and construed in connection with the latter will. Our statute provides that no will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked or altered otherwise than by some other will in writing, or some other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed. 3 Rev. St. (7th Ed.) p. 2286, § 42. The will offered for probate disposes of the entire estate, and is therefore a revocation of all former wills independent of the revocatory clause. *Ludlam* v. *Otis*, 15 Hun, 410; Schouler, Wills, § 406; 1 Redf. Wills, 362. As this will in express terms revokes all former wills, the intention of the testatrix is too clear for argument. It must be presumed that the testatrix intended that her last will should take effect. A will duly executed, which in terms revokes all former wills, and appoints executors, is a valid revocation of a former will disposing of part of the testator's property, although the will containing such clause of revocation makes no disposition of the property contained in the former will. *In re Thompson*, 11 Paige, 453; Whart. Ev. § 892. If she had continued to live a few days longer, there would have been no question that her intention was accomplished. Was such intention defeated by her death within two months after its execution? In *Canfield* v. *Crandall*, 4 Dem. Sur. 111, bequests were made to three several societies; one-half his property to one, and one-fourth to each of the others. A codicil executed within two months before the testator's death changed the proportion to one-third to each society. It was held by the learned surrogate of Allegany county that the codicil revoked the bequests in the will, and, being executed within two months previous to the testator's death, was void as to two of the societies incorporated under the act of 1848. The surrogate says (page 118): "If at the time the testator made the codicil to his will, he had made a new will, making no mention of a former will, but which contained precisely the same terms and conditions as are found in the will of 1871, as modified by the codicil of 1884, I think very few would contend that the provisions of the will of 1871 were not revoked by the latter instrument; that the latter instrument, producing the same result, is called a codicil ought not to change its legal *status*." In this case there was no express revocation of the will. The codicil only changed the proportion in which the societies should share in the estate, but it was the last expression of the testator's will, and made within the prohibited time. The residuary bequest to the American Female Guardian Society is diminished by the last will by the additional individual legacies in the sum of $3,500. These additional bequests may or may not affect the others, depending on whether the estate is sufficient to pay the legacies in full. The will of 1883 gives the

entire estate to Mary P. Benedict, if living at the time of the testatrix's death, and makes her the executrix. The last will omits her name entirely, and gives the estate to Henry T. Dunham in trust. There is no reason in saying that the testatrix supposed she was to leave two wills that were to be admitted to probate and construed together. She did not intend to give cumulative legacies. There would be no end to the complications and embarrassments that might arise in attempting to give effect to two independent instruments which were never intended to be construed together. A will may consist of several papers, executed at different times, but they must be in harmony with each other. It is true, as argued by counsel, that "a last will and testament is not a piece of paper;" still the paper is the only medium of preserving and expressing the purpose of the testator; but it is not true that "any will" can be proved under section 2611 of the Code of Civil Procedure. It is only the last will that can be probated. 3 Rev. St. p. 2285, § 40. Swinburne says: "But no man can die with two testaments, and, therefore, the last and newest is of force; so that if there were a thousand testaments, the last of all is the best of all, and maketh void the former." Swinb. Wills, pt. 7, § 14, cl. 1. Of course the subsequent will must be executed with the requisite formalities, by a competent testator, and the revocation must not be grounded on a mistaken assumption of fact. There was no mistake of law or fact on the part of the testatrix: It is a legal presumption that she knew she must live two months after its execution to render certain of the bequests valid. To this extent her capacity to give, as well as the capacity of the legatees to take, was limited, but it was not such an infirmity of the instrument as would make applicable the authorities relied upon by counsel. The revocation was absolute and unconditional, and took effect immediately. She might have made it conditional upon dying within two months, but she did not, although knowing the effect of the revocation clause. The republication of a will by a codicil makes the will speak from the date of the codicil. *Van Cortlandt* v. *Kip*, 1 Hill, 590, 7 Hill, 346; *Brown* v. *Clark*, 77 N. Y. 369, 377.

My attention has not been called to any decision in this state adverse to the views herein expressed. The case of *Price* v. *Maxwell*, 28 Pa. St. 23, seems to be squarely in point. Thomas Smith, the testator, died within one calendar month after the execution of his will containing a bequest to the Friends' Boarding-School. A previous will was made which specifically gave all his real estate to such school. The later will gave all his property, real and personal, to the school, named other executors, and revoked all former wills. Held, that the bequest was for religious and charitable uses, and void under the act of assembly of 1855, and that an express clause of revocation of former wills is not affected or impaired by the failure of the devise contained in the later will, by reason of the testator's dying within the time required by the act to give the devise effect; that when the second devise fails, not by reason of defective execution of the will, but by the incapacity of the devisee to take, or by any other matter *dehors* the will, the first will is thereby revoked. In *Chamberlain* v. *Chamberlain*, 43 N. Y. 424, the court (page 439) says: "Doubtless the restriction upon corporations is a governmental regulation, and one of policy, and to be enforced by the government; but an individual whose interests will be affected by a transgression of the rule may assert and insist upon the limitation as a restriction upon the power of the corporation to take" An express revocation will prevail, even though the object of the new will fails as against public policy. *Gossett* v. *Weatherly*, 5 Jones, Eq. 46. My conclusions are that the several bequests to the American Home Missionary Society, to the Susquehanna Valley Home, and to the American Female Guardian Society are invalid. Let the decree be entered accordingly.