LANDON, J.
The clause of the will under which the legacy is claimed is as follows :
“I give to the Japan Mission, under the direction of the Baptist Board of Foreign Missions, $1,000 (one thousand dollars). To pay the annual interest of the money, well invested, with good security.”
The surrogate found:
“ That neither the Japan Mission nor the Baptist Board of Foreign Missions were or are corporations, but that both are voluntary associations, doing missionary work under the direction and control of the American Baptist Missionary Union, which is a duly formed and constituted foreign corporation; that, for many years prior to her death, Mary L. Isbell had been a member of the First Baptist Church of the city of Binghamton, H. Y., and a contributor to the cause of missions of that church; that, thirty years prior to her death, she had a daughter, who married a missionary, and together they sailed for Japan, to engage in missionary work, but that the vessel on which they sailed was lost at sea, with all on board; that from this fact Mary L. Isbell had a peculiar interest in the Japan Mission, and that she intended the aforesaid bequest for the benefit of that mission alone, and did not intend to give it to the American Baptist Missionary Union.”
And also, as a conclusion of law:
“That the said bequest of $1,000 to the Japan Mission is void, and that the same falls into, and becomes a part of, the residuary estate.”
From our examination of the evidence, we think the surrogate’s finding that both the Japan Mission and the Baptist Board of Foreign Missions “are voluntary associations, doing missionary work under the direction of and control of the American Baptist Missionary Union,” is inaccurate, to a degree that constitutes error. The evidence shows that the Japan Mission, instead of being a voluntary association or body, separate and distinct from the corporation known as the “American Baptist Missionary Union,” is in fact the name of a certain department or field of labor of the corporation itself, and which it manages and conducts. Dr. Fletcher, the district secretary of the corporation, testified:
“I know of the Japan Mission; that is, the term cover our work in Japan. ' The missionaries that are sent to Japan are accepted by the American Baptist Missionary Union, and are designated to their work in Japan by that society. ■ The expenses of the Japan Mission are all paid by the American Baptist Missionary Union, and were so in June, 1891 [date of the will].”
He also testified that:
“The Baptist Board of Foreign Missions is a part of the board of managers of the union, and under its direction ; that, apart from such board of managers, there is no Baptist Board of Foreign Missions; that the board of managers of the union elects an exe *24 cutive committee of nine, which conducts the missions under the direction of the board of managers, and thus the board of managers of the corporation directs the Japan Mission, as one of its mission fields.”
It is plain from the evidence, which is not contradicted, that neither this Japan Mission nor the Baptist Board of Missions had any existence except through the corporation, the American Baptist Missionary Union. The Baptist Board of Missions was simply a convenient name, but not an instrumentality or association, apart from the union itself, by which the union designated that part of its activities which embraced its administration of its missionary enterprises. The “Japan Mission” was the name of one of its enterprises thus administered. The finding of the surrogate that the testatrix did not intend to give the legacy to the American Baptist Missionary Union cannot be upheld, upon the evidence. The testatrix intended to make her gift effectual. The only way this could be done was by and through the union. The corporation — that is, the union — was organized, to use the language of the acts of incorporation of the. general court of Massachusetts in 1845, and of the general assembly of Pennsylvania in 1846, “to diffuse the knowledge of the religion of Jesus Christ, by means of missions, throughout the world." These acts authorize it to receive gifts, devises, and bequests; and chapter 17 of the Laws of this state of 1870 confers upon it the like capacity. It is mainly supported by the contributions.of persons in sympathy with the Baptist denomination, and was, when this will was made, the only Baptist organization in the country covering the same or like fields of labor. The membership of the union was made up of life and annual members. The testatrix was a life member. The Union published the BaptistMissionary Magazine,largely circulated among the Baptist churches and communicants. In each number of this magazine there was published an annual report of the affairs of the union and of this mission, under the name of “Japan Mission.” By these published reports of the treasurer of the union, it appears that the union kept separate accounts of specific funds bequeathed to aid the several missions of the union, as the Japan Mission, Bangoon, Toungoo, African Medical, etc. The church which the testatrix attended made its contributions to foreign missions ’ through the union. The “ Board of Foreign Missions ” was the customary term which this church employed in designating the object for which collections for this purpose were solicited. The testatrix was a member of the Women’s Baptist Foreign Missionary & Auxiliary Society of the Baptist church which she attended. The contributions of this society went to the union. It is not distinctly found, but the evidence tends to show, that she had .no children or grandchildren living. The surrogate finds that she intended the legacy for the benefit of the Japan Mission alone; and he sets forth in his findings the motive justifying her intention, namely, that her only daughter had married a missionary, and together they sailed for Japan, to engage in missionary work, and were lost at sea. This was thirty years before she made her will. This finding by the surrogate is not inconsistent *25 with her purpose to have the legacy reach the Japan Mission through the means of the agency which she suggests, namely, the Baptist Board of Missions, which was in fact the name by which the American Baptist Missionary Union was commonly known, in ifs capacity as manager of the Japan Mission. Certainly, she expected the Baptist Board of Missions to administer her bounty, and, when she named the board, she, in effect, named the corporation for which the board could only act. In no way could that board lawfully act, except for the corporation. We think that a bequest to a department of an incorporated society, which department is inseparable from the corporation, and can only be made effectual through the corporation, may be upheld as a bequest to the corporation itself; especially so when this department has a distinctive name, by which it is commonly known, and is, as in this case, the designation of a particular field or class of religious activities and charities which have the sanction of the law, and, certainly with the members and friends of such communions, the sanction and stimulus of religious duty, in soliciting and administering pecuniary aid. In re Wehrhane, 40 Hun, 542. It was pointed out in the case cited that Betts v. Betts, 4 Abb. N. C. 417, relied upon by the respondent, is distinguishable. In the Betts Case the bequest was to the Marine Bible Society, an unincorporated society, and it was claimed by the corporation the American Bible Society. The Marine Society was not a department or branch of the American Society, but had its separate organization, and was simply auxiliary to the American. Society. It was its helper, but not a part of itself, and its management, and the measure of its help, was controlled by itself. See pages 341, 403. It was quite possible that a gift to the Marine Bible Society would not have aided the American Bible Society. The respondent cites Society v. Bowen, 21 Hun, 389. In that case there was a bequest to the Presbyterian Church of Chili, and a separate bequest of $1,000 to the Presbyterian Cemetery, the income of the money to be applied to its maintenance. The bequest to the cemeterjr was held invalid, the court holding that a trust was sought to be created, and no trustee named, and no beneficiary, competent to receive, named. The fact that the testator named the church as the legatee of one bequest, and the cemetery as the legatee of another, probably had some weight in leading the court to conclude that the testator did not intend to make his bequest to the cemetery by confiding it to the church. In the Wehrhane Case the court did not think the case should control its decision, and we do not think it should control in the case before us. But since we conclude, as a matter of fact, that the testatrix intended to bequeath this legacy to the American Baptist Missionary Union, effect should be given to her intention, notwithstanding the technical defect in naming the legatee. Lefevre v. Lefevre 59 N. Y. 434; Gray v. Society, 2 N. Y. Supp. 878; Greer v. Belknap, 63 How. Prac. 390; Hospital v. Schreck, 3 Dem. Sur. 225; In re Stiles’ Estate, 3 N. Y. Supp. 137; Canfield v. Crandall, 4 Dem. Sur. 114; Institution v. How’s Ex'rs, 10 N. Y. 84.
*26 We do not think that any trust was created by the terms in which the bequest was given. ■ The testatrix desired that the corporation should take and administer her bounty in favor of one of the worthy objects of its care in preference to the others. She desired that the principal should be preserved, invested, and’the income expended. This the charters of the American Baptist Missionary Union, and the enabling statute of this state, above cited, permit to the, corporation. Indeed, if the Japan Mission should seek to come into court, it would have to do so in the name of the union, and thus present the absurdity of suing itself. ' Since the legacy is to the union, for the benefit of itself, the suggestion of the testatrix as to its manner of enjoying the benefit creates a moral, but not a legal, obligation. Lawrence v. Cooke, 104 N. Y. 632; 6 St. Rep. 772; Pell v. Folger, 68 Hun, 443; 52 St. Rep. 682; Field v. Mayor, etc., 38 Hun, 590; In re Le Fevre, 5 Dem. Sur. 24.
We think the decree of the surrogate should be reversed, upon the facts, and a decree entered directing the payment of the $1,000 legacy to the American Baptist Missionary Union, with costs.
All concur.