---

(88 Misc. Rep. 702)

RECTOR, ETC., OF ST. GEORGE'S CHURCH IN CITY OF NEW YORK
v. MORGAN et al.

(Supreme Court, Special Term, New York County. January, 1915.)

CHARITIES ☞36—TESTAMENTARY TRUSTS—BEQUEST TO RELIGIOUS SOCIETY—
    USE OF INCOME—"MINISTRY."
        Under a will bequeathing to trustees a sum in trust, to invest and reinvest and pay the income to a religious society incorporated in 1811, under Laws 1801, c. 79, and having all the powers granted under the present Religious Corporations Law (Consol. Laws, c. 51), for the support of the "ministry" of said church, the corporation was entitled to hold the income from the trust fund as its absolute property, and to use it, not merely for payment of the salaries of the clergy, but for any of its lawful purposes; the word "ministry" meaning "ecclesiastical functions," or "duties," and not being used in the restricted sense of "clergy."
        [Ed. Note.—For other cases, see Charities, Cent. Dig. § 65; Dec. Dig. ☞36.]

Action for the construction of a will by the Rector, Church Wardens, and Vestrymen of St. George's Church in the City of New York, against John Pierpont Morgan and others, as executors and trustees

of and under the last will and testament of John Pierpont Morgan, deceased, and the trustees of the estate and property of the Diocesan Convention of New York. Judgment according to opinion.

Curtis, Mallett-Prevost & Colt, of New York City, for plaintiff.

Carter, Ledyard & Milburn, of New York City, for defendants.

COHALAN, J. The "Rector, Church Wardens, and Vestrymen of St. George's Church in the City of New York"—that being the corporate name of St. George's Protestant Episcopal Church—brings this action to obtain a construction of the tenth article of the will of J. Pierpont Morgan deceased. In the article in question the testator bequeathed to—

"the trustees of the estate and property of the Diocesan Convention of New York the sum of $500,000 in trust, to invest and reinvest the same, and pay over the income to St. George's Protestant Episcopal Church in the city of New York for the support of the ministry of such church, upon the written receipt for the same of the treasurer of such church or other proper officer appointed for the purpose by the vestry thereof."

It is a proper form of action. Tonnele v. Wetmore, 195 N. Y. 436, 88 N. E. 1068. The plaintiff was incorporated as a religious society in 1811, under chapter 79 of the Laws of 1801, and has all the powers granted under the present Religious Corporations Law (Consol. Laws c. 51; Laws 1909, c. 53). It may take and hold property of the value of $10,000,000, or its yearly income may reach the sum of $1,000,000. Gen. Corp. Law (Consol. Law, c. 23) § 12, as amended to 1911 (Laws 1911, c. 581). St. George's Church now has an endowment of $400,000, with an annual income of about $38,000; besides, it has valuable realty holdings. Hence there is no preclusion by law so far as this bequest is concerned.

The action raises for decision two propositions: (1) Does the plaintiff hold the income of the $500,000 trust fund without restriction, so that it may apply it to the corporate needs of St. George's Church? and (2) as a corollary to the first proposition, does the word "ministry," in article X of the will, mean the clergy or officers of the church, or does it refer to the functions of the church in carrying out the religious and charitable purposes of the corporation?—in other words, to its ministrations.

These two questions are best answered by a study of the remarkable church activities—characterized by zeal and generosity—of this testator rather than by a resort to a variety of dictionaries to refine and shade the meaning of this comprehensive term—ministry. For from a consideration of his long association with and knowledge of the work and needs of the parish must come the manifest intent of the creator of the trust. The evidence shows that Mr. Morgan was a vestryman in this church from 1868 to 1885, and that he was a warden therein from the latter year until his death, March 31, 1913; that he regularly attended the meetings of the vestry and was familiar with all the affairs of the church; that he gave the memorial building to the church and paid annually $4,500 for its support; that he built the trade school and maintained it at an expense of $5,000 per year; that he built the Deaconess

House; that he provided the property of the summer home for the poor of the parish at Rockaway Beach; that he was ready from time to time to contribute one-half of any outlay for repairs or to meet any deficits; that he had agreed to give $100 for every other $100 collected up to the sum of $400,000 for an endowment for the church, which agreement was drawn so as to be binding upon his executors and heirs, and that he made an annual payment of $1,000 under the envelope system.

The above recital of fact, together with the fact of the bequest, in my view imports one thing—that the decedent desired to have these church activities with which he was so closely identified carried on without lacking that financial support which they had received in his lifetime. He provided, therefore, for this purpose a fund of $500,000, the annual income of which would amount to $24,000. He undoubtedly knew that the salaries of the clergy, consisting of a rector and four assistants, amounted to not more than $13,000 per year. It follows, and I hold, that when Mr. Morgan made this bequest it was not his intention to restrict the use of the income to the payment of the salaries of the clergy. It was made to support the church in its charitable work and in the furtherance of the activities carried on in the buildings established by him, all the expenses of which he had liberally paid for during his lifetime. It is scarcely conceivable that he intended to provide this income for salaries alone, and to make no provision for the other objects which so much claimed his interest.

There is not wanting authority in law to support the first proposition, and I am satisfied that the church has an unrestricted right to the use of the income. Johnston v. Hughes, 187 N. Y. 446, 80 N. E. 373; Clarke v. Leupp, 88 N. Y. 228; Matter of Isbell, 1 App. Div. 158, 37 N. Y. Supp. 919. As the amount paid for the salaries of the clergy is only about $13,000, and the income of the fund is $24,000, it cannot be said that the entire income must be used for that specific purpose. A reading of article X—especially the phrase "for the support of the ministry of such church"—indicates to me that the disposition and the use of the income are not prescribed or limited. The testator intended, from the fairest interpretation of the meaning of the article, that the trustees and executors should be relieved from all responsibility with regard to the use of the income; that when receipt for it should pass, then it should go into the general fund of the church.

If it were necessary to define the term "ministry" in order to sustain any other element in the case, there is abundant dictionary authority to hold that its usual meaning is "ecclesiastical functions" or "duties." Murray's, 1908; Webster's, all editions; American Standard and other dictionaries. In fact, there is a noticeable lack of its use in the sense of "clergy," although its use in this restricted sense obtains in some churches.

Plaintiff is entitled (a) to hold the income from this fund as its absolute property, and (b) to use it for any or all of its lawful purposes.

Judgment accordingly.