CORPORATION OF THE CHAMBER OF COMMERCE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN J. BENNETT, JR., Attorney-General of the State of New York, Defendant.

Supreme Court, New York County, April 19, 1932.

*Cohen, Gutman & Richter* [*Julius Henry Cohen, Kenneth Dayton* and *Burton A. Zorn* of counsel], for the plaintiff.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein* of counsel], for the defendant.

UNTERMYER, J.   The motion is for judgment on the pleadings. The plaintiff is a corporation, created in 1770 by royal charter of King George III, confirmed by act of the Legislature of this State in 1784 (Laws of 1784, chap. 30).   Aside from incidental powers

it is empowered by its charter (1) " to carry into execution, encourage and promote by just and lawfull ways and means, such measures as will tend to promote and extend just and lawfull commerce," and (2) " to provide for, aid and assist at their discretion such members of our said corporation as may hereafter be reduced to poverty and their widows and children." For these corporate purposes the plaintiff is authorized to receive gifts of real or personal property, and this action is concerned with two such gifts.

The first gift in point of time is known as the " Green Fund." This donation was made by Mrs. John C. Green on February 1, 1883, in distributing a fund left to her by her husband for that purpose. It consisted of a sum of $50,000, which together with income then accumulated amounted to $57,000. It was made by an oral address of presentation by her agent, Robert L. Kennedy, the significant part of which follows: " His widow [Mrs. John C. Green], the daughter of another eminent and successful merchant of the City, the late Mr. George Griswold, in distributing a sum of money which was left to her for that purpose, wishes to employ a portion of it for the relief of the members of a class with whom he [Mr. John C. Green] was so long connected, some of whom have not been equally prosperous. She has authorized me to offer to the Chamber the sum of $50,000, set apart for that purpose some time ago, which with its accumulations now amounts to about $57,000, if they will appoint a committee to take charge of this sum and the distribution of the income arising therefrom among the class intended to be benefited. The instructions being that the beneficiaries shall have been members of this Chamber, merchants in good repute in the City of New York, and that their misfortunes were not the result of nor attended by any dishonorable transactions on their part."

In November, 1898, the plaintiff received another donation, known as the " Eno Fund," amounting to $150,000. This donation was received under article sixth of the will of Amos R. Eno, which, so far as material, provides: " I give to the corporation of the Chamber of Commerce of the City of New York the sum of $150,000 to provide for, aid and assist such members of such corporation as may be reduced to poverty, and their widows and children."

Since the receipt of these two funds they have been administered by the plaintiff within the limitations with which the gifts were coupled, but due to the fact that the membership of the plaintiff consists, with few exceptions, of men of wealth, applications for financial assistance have been rare and the amount expended has been insignificant in comparison with the dimensions of the funds. The result has been that income on the Green fund and the Eno

fund has accumulated at a constantly accelerating rate, the principal of the Green fund now amounting to $337,575.28 and the Eno fund to $389,811.91. Experience having thus demonstrated that relief of the class intended to be benefited by these donations is not likely to consume the income of the funds, the plaintiff desires to apply any surplus remaining from time to time to its other corporate activities. Contending that the gifts are absolute, it asserts the right, though it does not insist upon its full exercise, to use the total principal and income of the funds " to promote and extend just and lawful commerce." For that purpose it has instituted this action, in which the Attorney-General of the State has been made a defendant, for a declaratory judgment determining the plaintiff's right in respect to these two funds. The defendant has answered, and by answer or stipulation has admitted the material facts upon which the plaintiff relies. The Attorney-General's principal contention is that the plaintiff is not a charitable corporation because it is empowered to promote and extend commerce and, furthermore, that the gifts in question are not absolute. Accordingly, he maintains that the Supreme Court, under section 12 of the Personal Property Law, as amended, should control the disposition of any surplus resulting from the funds. In this connection the plaintiff's argument is not without force that if the plaintiff is not a charitable corporation, the Attorney-General, under section 12, is not concerned with the disposition of the funds, and that if the gifts are absolute it is not important whether the plaintiff is a charitable or business corporation. Assuming those questions, however, to be material, I am of opinion not only that the gifts are absolute but that the plaintiff is a charitable, or at least a benevolent corporation. (*Matter of Altman*, 87 Misc. 255.) (See, also, *Bird* v. *Merklee*, 144 N. Y. 544; *Sherman* v. *Richmond Hose Co.*, 230 id. 462; *Roberts* v. *Corson*, 79 N. H. 215; *Masonic Education & Charity Trust* v. *Boston*, 201 Mass. 320.) That question, it is important to observe, does not arise with relation to the plaintiff's right to any exemption from taxation, in which event, it may be, different considerations would apply.

Charity is not limited to the care of the sick and the relief of the destitute. (Fowler, Law of Charitable Donations, p. 70.) In its broader aspects it may include any purpose of general benefit untainted by motives of private gain. (See Shelford, Law of Mortmain, p. 61.) " When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity." (*Matter of MacDowell*, 217 N. Y. 454.) The diverse purposes which have

been sustained as charitable are enumerated, with many illustrations, in *Sherman* v. *Richmond Hose Co.* (230 N. Y. 462) and *Matter of Frasch* (245 id. 174). It is unnecessary to repeat them here. It is sufficient for present purposes to say that the plaintiff's charter powers, " to promote and extend just and lawful commerce," not for the advantage of any individual or special group, but in the public interest, cannot be classified except as charitable. A trust created " for the purpose of establishing a fund for chemical research " in the field of agricultural chemistry has been directly held to be charitable. (*Matter of Frasch, supra.*) It would seem that a gift for the purpose of commercial or economic research would be equally so. And if this be true, a corporation having for its aim the extension of commerce by the development of commercial facilities, by the improvement of commercial relations, or by the rectification of any commercial abuses which research or experience may disclose, is charitable also, if its purpose be the universal advantage of mankind.

Not only are the plaintiff's charter powers of a charitable or public character, but such also have been its activities admitted by stipulation — too numerous for enumeration here — extending over more than a century of time. Therefore, whether we consider what the plaintiff is empowered to do or what, pursuant to those powers, it has done (*Hamburger* v. *Cornell University,* 204 App. Div. 664; affd., 240 N. Y. 328), the conclusion is the same. Within the wider definition of that term, I think the plaintiff is a charitable corporation. (*Farmers' Loan & Trust Co.* v. *Ferris,* 67 App. Div. 1; *Camp* v. *Presbyterian Society of Sackets Harbor,* 105 Misc. 139; *Buell* v. *Gardner,* 83 id. 513; *Starr* v. *Selleck,* 145 App. Div. 869; affd., 205 N. Y. 545; *Matter of Burnham,* 112 Misc. 560; affd., 196 App. Div. 948; affd., 232 N. Y. 506; *Matter of Loeb,* 167 App. Div. 588; *Matter of DeLong,* 140 Misc. 92; *Coggeshall* v. *Pelton,* 7 Johns. Ch. 292.)

If, then, the plaintiff is a charitable or benevolent corporation, what was the nature of these gifts? Are they absolute, or is the quality of the plaintiff's ownership reduced by the instructions concerning the specific purpose to which the funds shall be applied? I think that question is settled by many decisions in this State in which effect has been denied to such restrictions where absolute ownership of property has been transferred. The futility of such restrictions is attributable no doubt to the ancient conception that unqualified ownership of property and restraint upon its use cannot in their nature coexist. This is a principle older than the common law of England. (Grotius, book 1, chap. 6, § 1; Shepherd's Touchtone [Preston's ed.], 131; Coke, 2 Inst. 65; *Stukeley* v. *Butler,*

1 Hobart, 170.) The principle is referred to, though as a rule of construction, in *Johnston* v. *Hughes* (187 N. Y. 446), where it is declared to be " ' well settled by a long succession of well-considered cases that when the words of the will in the first instance clearly indicate a disposition in the testator to give the interest, use and benefit of the estate absolutely to a donee it will not be restricted or cut down to any less estate by subsequent or ambiguous words inferential in their intent." Indeed, the authorities seem to warrant the conclusion that the absolute ownership of property cannot be transferred and the right of disposition withheld from the transferee except by the creation of a trust or the imposition of a condition subsequent. Were these donations made in trust or upon condition subsequent?

A gift to a corporation to be used for one of several corporate purposes does not constitute a trust. " Nor is the donation rendered the less absolute, or converted into a trust, because the donor specifies that the donation shall be employed for one of the uses or purposes for which the corporation was chartered." (Fowler, Law of Charitable Donations, p. 84.) Controlling authorities in this State to the same effect are *Wetmore* v. *Parker* (52 N. Y. 450); *Bird* v. *Merklee* (*supra*); *Johnston* v. *Hughes* (*supra*); *Matter of Isbell* (1 App. Div. 158); *Warburton Avenue Baptist Church* v. *Clark* (158 id. 230); *Matter of Arrowsmith* (162 id. 623); *Matter of Hart* (205 id. 703); *Matter of Roche* (53 Misc. 187; appeal dismissed, 119 App. Div. 927); *Matter of Allen* (111 Misc. 93). In *Wetmore* v. *Parker* (*supra*) the court said: " The corporation uses the property, in accordance with the law of its creation, for its own purposes; and the dictation of the manner of its use, within the law, by the donor, does not affect its ownership or make it a trustee. A person may transform himself into a trustee for another, but he cannot be a trustee for himself." Here the donations were made to the plaintiff corporation, not to be held in trust for any beneficiary or class of beneficiaries, but to be applied to one of its corporate purposes. This did not convert the corporation into a trustee. " Gifts to religious and charitable corporations to aid in carrying out the purposes for which they are organized, whether by expending the principal of a bequest, or the income of a bequest to be invested in perpetuity, do not create a trust in any legal sense." (*Bird* v. *Merklee, supra.*) It was so held in *Holland* v. *Alcock* (108 N. Y. 312); *Matter of First Presbyterian Society of Buffalo* (106 id. 251); *Van De Bogert* v. *Reformed Dutch Church* (219 App. Div. 220), and *Erwin* v. *Hurd* (13 Abb. N. C. 91). In the light of these authorities the conclusion cannot be avoided that the gifts here were not in trust, except in the general sense in which all cor-

porations hold their property in trust for the execution of their corporate powers. Not until dissolution of the corporation and the extinction of its powers could a trust, even in this limited sense, be said to assume the semblance of reality. (See *Sherman* v. *Richmond Hose Co., supra.*) But in the case above cited the court, in so holding, was careful to observe: " It held the property in trust — not a trust imposed by the donor but by the charter which required the corporation to perpetually devote its funds to such purposes " (p. 472). Until such a contingency shall arise it cannot be said that any trust exists here.

Nor is there any condition subsequent divesting the plaintiff of its interest in either of these funds if it shall divert them from the uses to which they were directed to be applied. And even if we might construe as a condition the instructions which accompanied each gift, we find no provision making such a condition effective by a gift over in case of breach. (*Matter of Arrowsmith, supra.*) Under these circumstances, the expressions concerning the purposes to which the funds shall be applied must be construed, not as conditions subsequent, but as precatory merely (*Sherman* v. *Richmond Hose Co., supra,* 469, 470; *Johnston* v. *Hughes, supra; Wetmore* v. *Parker, supra; Matter of Isbell, supra; Van De Bogert* v. *Reformed Dutch Church, supra; Matter of Hart, supra*), " to be disregarded if inconvenient." (Fowler, Law of Charitable Donations, note, pp. 129, 130.) As the court observed in a very similar case: " He has not imposed any conditions whatsoever. He merely indicated a purpose, thus making the gift his primary object and the use to be made of it his secondary purpose. * * * Should a testator leave to his daughter a sum of money with which to purchase for her use a diamond necklace, the gift would be absolute and vest the money in her, and if she should thereafter choose to invest it in bonds instead of diamonds there would be no cause for complaint that the gift was invalid." (*Johnston* v. *Hughes, supra.*) Here, also, the persons who made the donations created no trusts; they imposed no conditions. They gave the funds to be applied to a particular corporate purpose, it is true, but they gave them absolutely none the less.

Since the plaintiff is a charitable corporation; since the funds are held neither in trust nor upon condition subsequent, but vest in the plaintiff indefeasibly, the plaintiff is entitled to judgment on the pleadings, and the motion must be granted. The order to be entered should provide, in accordance with the consent contained in the plaintiff's brief, that only so much of the funds shall be used for other corporate purposes as may not be required for the relief of destitute members of the plaintiff or their families. Settle order.