In the Matter of the Construction of the Last Will and Testament of AUGUST DOOPER, Deceased.

Surrogate's Court, Bronx County, November 9, 1925.

Wills — construction — testator, after directing that residue of real and personal property be converted into cash by his executor, gave said residue to Missionary Society of Most Holy Redeemer for religious and charitable uses of said society — in event said society was unable by law to take, testator gave said residue, after it was converted into cash upon his death, to associate in said society — special statute incorporating said society (Laws of 1864, chap. 88) barred title to real estate, income of which exceeded $10,000 annually — General Corporation Law, § 12, as amd., increased limit of value of property to be taken by said society — society not precluded from receiving personal property beyond limit recited in statute under which it was incorporated — society entitled to take bequest — contestants herein, heirs at law and next of kin of testator, are persons interested, within meaning of Surrogate's Court Act, § 314, subd. 11, and under § 145 may request construction of will — Religious Corporations Law, § 14, is not exclusive — power of sale valid and applied to stock in realty corporation held by decedent.

The Missionary Society of the Most Holy Redeemer in the State of New York, known as the Redemptorist Order, incorporated by a special act (Laws of 1864, chap. 88), under which it might take, receive, hold and enjoy by gift, devise or bequest any real estate or personal property within the State " provided the annual value of such real estate  *  *  *  shall not exceed the sum of Ten Thousand Dollars," by reason of the enactment of section 12 of the General Corporation Law, as amended, increasing the limitation on the value of the property which a non-stock corporation can hold to $20,000,000 or less, and a yearly income thereon of $2,000,000 or less, is entitled to hold and enjoy real and personal property, the value of which would produce an income of not more than $2,000,000 yearly.

Accordingly, the said society, of which the decedent was a member, and to whom, after directing that the residue of his real and personal property be converted into cash by his executor, he gave said residue for religious and charitable purposes of said order, is not precluded from taking said residue, in the absence of any evidence warranting the contention that the amount the order now holds, together with the amount that it will receive in any form, under decedent's will, exceeds the limit fixed by statute.

Moreover, since there is no prohibition in the statute incorporating said society which prevents it from receiving personal property beyond the limit fixed by the statute, it may take under the will, for the power of sale given decedent's executor worked an equitable conversion of the real estate owned by the

decedent and said beneficiary became entitled to the cash proceeds of the sale as personalty and not as real estate.

Contestants herein, who are heirs at law and next of kin of decedent, were entitled to raise the question as to the right of the society to take under the will, since within the meaning of subdivision 11 of section 314, they are persons interested, and under section 145 of the Surrogate's Court Act may request a construction of the will.

Section 34 of the Religious Corporations Law is not exclusive of the rights of the contestants under the Surrogate's Court Act. Said section seems to be directed not to testing the question of the power of the corporation to take by devise or bequest, but rather the right to hold the property which it already has and which it may have acquired by purchase or gift and not necessarily by devise or bequest.

The power of sale is not invalid on the ground that it is an attempt to evade the statute, since it appears that it was rather a desire to comply with the statute that prompted the decedent to direct the executors to change the character of the property from realty, which might be prohibited, to personalty, which was permitted.

Since the decedent owned all the stock of a corporation which had title to real property, it seems, that the power of sale applied to said stock.

PROCEEDING for construction of a will.

*Kadel, Van Kirk & Reynolds* [*J. Philip Van Kirk* of counsel], for the executor.

*George V. Grainger* [*Martin A. Schenck* of counsel], for the Missionary Society of the Most Holy Redeemer in the State of New York, residuary legatee.

*Cohalan & Cohalan* [*John P. Cohalan* of counsel], for Elizabeth R. Pfluger, heir at law and next of kin.

*William S. Evans*, special guardian for Geertje Bouma and others, heirs at law and next of kin.

*Francis J. Kuerzi*, attorney for Carrie Reebe and William Reebe, heirs at law and next of kin.

*Francis B. Wood* [*Henry W. Ryan* of counsel], for Sanna Benner, heir at law and next of kin.

*Strang & Taylor*, for Lena Stolz, heir at law and next of kin.

SCHULZ, S.:

The decedent by his last will and testament, after directing the payment of his debts and funeral expenses and devising and bequeathing such real estate and personalty, in the Kingdom of Italy, as he might own at the time of his death, provided, so far as material to the questions involved, as follows:

" *Third.* All the rest, residue and remainder of my estate, both real and personal and wheresoever situate, (my real estate situate in the State of New York having been first converted into

cash by my Executor hereinafter nominated and appointed as hereinafter directed by me), I give, devise and bequeath unto the Missionary Society of the Most Holy Redeemer in the State of New York, for the religious and charitable uses of said Society, to have and to hold the same unto it, and its successors and assigns forever. Should for any lawful reason, statutory or otherwise, the said, the Missionary Society of the Most Holy Redeemer in the State of New York, be unable to take, receive and hold the estate, real and personal, and the proceeds of the sale of said real estate, herein bequeathed and devised to it, in that event, I give, devise and bequeath all of said rest, residue and remainder of my estate, both real and personal and wheresoever situate and the proceeds of sale of my real estate in the State of New York, or elsewhere, unto my beloved friend James Hayes, at present residing at Atlantic City, New Jersey, to have and to hold the same unto him and his heirs and assigns forever.

"*Fourth.* I hereby nominate and appoint Siebrand H. Niewenhous, of the City of New York, to be the Executor of this my last Will and Testament,   *   *   *   and I do hereby direct my said Executor to sell and convey and convert into cash any real estate I may die seized of, or be in any manner interested in, situate within the State of New York, as soon as can be conveniently done after my decease, without unnecessary sacrifice, and to pay over and deliver the proceeds of said sale or sales unto my residuary legatee named in the Third paragraph of this my will, to wit: The Missionary Society of the Most Holy Redeemer in the State of New York, or should it by law be unable to take, receive and hold the same, then unto my friend said James Hayes of Atlantic City, New Jersey; and for the purpose of carrying this direction to convert my said real estate into cash, into effect, and for the purpose of the better management, distribution and effectuating the provisions of this my will generally, and also as to all other real estate I may die seized of, situate anywhere else in the United States of America, I do hereby authorize, empower and direct my said Executor and his successor, to sell and convey my said real estate, or any interest therein, at public or private sale,   *   *   * "

Certain of the heirs at law and next of kin interposed objections to the will which, among other things, alleged that the real property which would pass to the Missionary Society of the Most Holy Redeemer in the State of New York by paragraph "third" is of greater value and larger income than it would be lawful for such society to receive; that the attempted disposition is invalid, illegal and void and that the alternate gifts in paragraph "fourth" are null and void, being an attempt to convey to said society by

indirection or to the members of the society for its use and benefit, property which it is by law forbidden to receive, and asked for a construction.

No proof as to any property in Italy has been submitted, and no point appears to be made as to such property.

The decedent was a member of an organization known as the Redemptorist Order, of which the part functioning in the State of New York is incorporated under the name of The Missionary Society of the Most Holy Redeemer in the State of New York. The latter for brevity will hereafter be referred to as the "Society."

Counsel for the Society raises a preliminary objection, namely, that the contestants have no standing to litigate the matter, and that the only proper person to do so under the statute is the Attorney-General of the State of New York. (Religious Corp. Law, § 14.) In other words, they proceed on the theory that statutes such as the one here under discussion are governed by the same principles as the law of mortmain in England, and that their violation can only be followed by forfeiture to the State or by dissolution of the corporation for an act *ultra vires*, but that the title remains in the corporation until such action takes place. While there is ground for such contention (See article in the Cornell Law Quarterly, June, 1925, at p. 501, and cases collated), the law in this State applying to situations such as that here presented is that set forth in *Matter of McGraw* (111 N. Y. 66), from which I quote (p. 94): "A devise to a corporation which is forbidden to take * * * does not, therefore, give a title subject to the right of some superior to claim a forfeiture of the land; but if it be in violation of a statute, I think the devise is void and the land descends to the heir or residuary devisee." And again (p. 106) "The cases of the *Elevated Railroad* (70 N. Y. 327, 338) and *Moore* v. *Brooklyn, etc., Railroad* (108 id. 98, 104) are cited to show that none but the sovereign can take advantage of a forfeiture of the charter, and that must be in a direct proceeding against the corporation. The principle is undenied. But in a case like this it is no forfeiture that is being insisted upon. It is simply a question of title to the property, and, provided it has not been legally devised or bequeathed, it necessarily vests in the heir or next of kin." *Chamberlain* v. *Chamberlain* (43 N. Y. 424, 439) is to the same effect. The court there said: "Doubtless, the restriction upon corporations is a governmental regulation, and one of policy, and to be enforced by the government; but an individual, whose interests will be affected by a transgression of the rule, may assert and insist upon the limitation as a restriction upon the power of the corporation to take." (See, also, *Decker* v. *Vreeland*, 220

N. Y. 326; *Robb* v. *W. & J. College*, 185 id. 485, 491, and *Amherst College* v. *Ritch*, 151 id. 282.)   The cases of *Fritts* v. *Palmer* (132 U. S. 282) and *Lupton's Sons Co.* v. *Automobile Club of America* (225 id. 489) do not warrant a conclusion to the contrary.

It is not disputed that the contestants are heirs at law and next of kin of the decedent.   If the attempted disposition is void, illegal and of no effect, then the decedent has died intestate as to the residue of his estate and they would be entitled to share in the same, or, in another contingency, Father Hayes might be adjudged to take the property as trustee for them.   It would appear then that they are persons interested (Surrogate's Court Act, § 314, subd. 11), and under section 145 of the Surrogate's Court Act have a right to request a construction of the will.   I do not read the provision of the Religious Corporations Law cited to be exclusive of the rights of the contestants under the Surrogate's Court Act.   It appears to be directed not to testing the question of the power of the corporation to take by devise or bequest, but rather the right to hold the property which it already has and which it may have acquired by purchase or gift and not necessarily by devise or bequest.   It gives the court visitorial and inquisitorial powers, but does not take away any right to take which an heir at law or next of kin may have if the devise or bequest be void.

I accordingly hold that the contestants have a right to raise the question at issue.   The motion made to dismiss the objections on that ground is denied and an exception accorded to the residuary legatee.

The Society was incorporated under a special act (Laws of 1864, chap. 88) which provided that it might " take, receive, hold and enjoy, by gift, grant, devise, bequest or otherwise, so far as the same is in accordance with the general laws of this State, and not otherwise, any real estate or personal property within this State, provided the annual value of such real estate other than the churches and grounds in use for the society, shall not exceed the sum of ten thousand dollars  *  *  *."   Thereafter, the amount of the annual income of the real estate which the Society might hold was increased to $20,000.   (Laws of 1888, chap. 46.)   Other amendments were made (Laws of 1896, chap. 257; Laws of 1897, chap. 192) but no further change took place as regards the income referred to, prior to the death of the decedent.   Unless, therefore, some other legislative action brought about a change, the Society could not take and hold real estate, the income of which exceeded the sum of $20,000 annually.

In 1889 the Legislature passed an act (Laws of 1889, chap. 191)

which provided as follows: " Any religious, educational, literary, scientific, benevolent, or charitable corporation, or corporation organized for hospital, infirmary, or other than business purposes, may take and hold property not exceeding in value two million dollars, or the yearly income derived from which shall not exceed one hundred thousand dollars, notwithstanding the provisions of any special or general act heretofore passed or certificate of incorporation affecting such corporations."

In 1890 the latter act was amended by increasing the amounts to $3,000,000 and $250,000 respectively. (Laws of 1890, chap. 497.) In 1892 by an amendment of the General Corporation Law (Laws of 1892, chap. 687) the statute of 1890 was repealed and section 12 of the General Corporation Law was enacted which provided that " *a corporation not having capital stock* [italics mine] may take and hold property not exceeding in value three million dollars or the yearly income derived from which shall not exceed five hundred thousand dollars, notwithstanding the provision of any general or special act heretofore passed * * * affecting such corporation." In 1894 section 12 was amended and the language slightly changed so that the increase in the amount of property which could be held was made to apply to " a corporation other than a stock corporation." (Laws of 1894, chap. 400.)

Leaving out of consideration the statute last referred to, I am satisfied that the effect of the other acts cited was to increase the amount of property which the Society might hold, as therein stated. It is urged, however, that the amendment of 1896 (Laws of 1896, chap. 257), which again recited the $20,000 limitation, being later than the enactments referred to, showed an intention on the part of the Legislature to limit the amount of realty the Society might hold to so much as would produce an income of not more than $20,000 a year.

Assuming, without determining, this to be so, we find that in 1909 section 12 was re-enacted in amended form increasing the value of the real estate and income which the corporations described therein could enjoy, to $6,000,000 and $600,000 respectively. (Laws of 1909, chap. 276, amdg. Gen. Corp. Law of 1909, § 12.) If then the amendment of the act incorporating the Society in 1896 (Laws of 1896, chap. 257) resulted in restoring the limitation contended for by the contestants, it would seem that the statute of 1909 (Laws of 1909, chap. 276) again resulted in increasing the amount of property that might be held.

Contestants urge, however, that the Society does not come under the language of the last cited statute because section 2 of the General Corporation Law, in classifying corporations provides that " a

non-stock corporation shall be either, (1) a religious corporation, (2) a membership corporation, or (3) *any corporation other than a stock corporation* " (italics mine); that the 3d subdivision is a class by itself entirely distinct from the other two classes and that the amendment provides for an increase in the value of the holdings of this class of corporation only, because the words " *a corporation other than a stock corporation* " are used.

With this contention I do not agree for the following reasons:

Historically, it appears that in the first statute relative to this subject, religious, educational, etc., corporations were specifically mentioned and the act was also made applicable to corporations organized for " other than business purposes " (Laws of 1889, chap. 191). The same is true of the first amending act (Laws of 1890, chap. 497). The next enactment (Laws of 1892, chap. 687, § 12) broadened the scope of the law, for we find that no longer are religious, educational, etc., corporations or corporations organized for other than business purposes mentioned, but the provision is made to apply to " a corporation not having capital stock." The re-enactment of section 12 (Laws of 1909, chap. 28 [Consol. Laws, chap. 23]), and the amendment of the same (Laws of 1909, chap. 276) show no intention to narrow the limitations to which the provisions shall apply by barring religious, etc., corporations. The change in the language of the section does not warrant the conclusion that such was the purpose. The words " a corporation other than a stock corporation " were not used as the title of a certain class of corporations, but as descriptive of the corporations to which the section referred. The whole tendency of this legislation has been to broaden and not to narrow the application of the law.

The introductory statement of the section while not determinative, is nevertheless indicative of the intent of the Legislature. In the law of 1892, and in those of 1909, the introductory statements both refer to limitations of the property of *non-stock corporations,* and a non-stock corporation includes a religious corporation. If the change in the language between the law as it existed in 1892 and as it became in 1909 was intended to narrow the scope of the provision, it seems quite improbable that the Legislature would have used the same statement.

I, therefore, conclude that the statute of 1909 (Laws of 1909, chap. 276) did apply to the Society, and that by reason of its passage the amount of property, real and personal, which it could hold and enjoy was increased as therein set forth. (*Rector, etc., St. George's Church* v. *Morgan,* 88 Misc. 702.)

If the law of 1909 applied to the Society, then the later amend-

ments (Laws of 1911, chap. 581; Laws of 1923, chap. 208) also applied. The last cited, which was in force at the time of decedent's death, increased the limitation on the value of property which could be held to $20,000,000 or less, and the yearly income to $2,000,000 or less. This limitation applies to both real estate and personal property, and there is no contention that the amount that the Society now holds, together with the amount that it will receive in any form, exceeds this limitation; hence there is no violation of the statute.

If, however, I am wrong in these conclusions, and it is a fact that the limitation of $20,000 still applies to the Society, nevertheless am I satisfied that the corporation may take under the provisions of this will.

There is no prohibition in the statute incorporating the Society, as amended, which prevents it from receiving personal property beyond the limit stated. The restriction is specifically as to real estate. If, therefore, the Society, under this will, did not take real estate, there was no violation of the provisions of the statute. The decedent having been advised by counsel, and fearing that some restriction might exist, directed that all of his real estate be sold and turned into cash. This worked an equitable conversion of the real estate owned by the decedent at the time of his death, and the beneficiary became entitled to the cash proceeds of the sale as personalty, not as real estate.

Nor is the power of sale invalid as urged on the ground that it is an attempt to evade the statute. There was no such attempt. The indications are that it was rather a desire to comply with the statute which prompted the decedent to direct the executors to change the character of the property from realty which might be prohibited, to personalty, which was permitted. The decedent could have sold such real estate as to which he had the title, during his life, and bequeathed the proceeds to the Society. Instead of that he directed its sale after his death. In no event did real estate or an interest in real estate pass to the Society, and as a consequence the law referred to was not violated.

The decedent was the owner of all of the shares of stock of a corporation known as The Melrose Courts, Incorporated, which owned realty producing an income in excess of the amount sanctioned by the act incorporating the society, as amended. The contention is, that as the shares of stock were personalty, they passed to the corporation under the will, and the power of sale did not operate upon them, and that the effect, therefore, was the same as if the realty had passed to the Society, for, while the legal title was in the corporation, as the Society owned all of the stock

of the corporation, it had full control over the real estate and in effect owned the same.

There was no specific bequest of the shares of stock. They formed a part of the residuary estate, but that does not mean that they necessarily passed in kind. They were subject to the administration of the estate by the executor, and he required no specific power of sale to enable him to dispose of them, if necessary. He was invested with the authority to do so by virtue of his office as executor. If, on the other hand, the stock was real estate, for which contention I know of no authority, or that it was an interest in real estate, then the executor had the right to sell under the mandatory power given in the will. Again, as the decedent owned all of the stock of the corporation which had title to real property, there is authority for the conclusion that he considered the latter to be his real estate and intended the direction to sell to apply to the same. (*Matter of Friedman,* 177 App. Div. 755; *Matter of Cartledge,* 118 Misc. 131; affd., *sub nom. Matter of Columbia Trust Co.,* 203 App. Div. 899; affd., 236 N. Y. 515; *Matter of Manning,* 196 App. Div. 575; affd., 232 N. Y. 512.)

For the reasons above set forth, the motion made to dismiss the objections is granted upon the merits.

I have not discussed the alternate provisions by which Father Hayes might have taken for, if my views are correct, they do not come into effect.

Costs will be awarded to the petitioner and to the residuary legatee, and an allowance granted to the special guardian, both payable out of the estate.

Settle decision and decree accordingly.