## In the Matter of the Estate of GENEVIEVE BRADY MACAULAY, Deceased.

Surrogate's Court, New York County, April 11, 1940.

*Miller, Owen, Otis & Bailly* [*William FitzGibbon* and *Ethan Allen* of counsel], for the petitioners.

*Larkin, Rathbone & Perry* [*Arthur W. Siegrist* of counsel], for the Central Hanover Bank and Trust Company, as trustee.

*Felix A. Muldoon,* for the Manhattanville College of the Sacred Heart.

*Charles J. Tobin,* for the Maternity Hospital and the Infant Home of Albany.

*John J. Bennett, Jr., Attorney-General [Robert P. Beyer, Assistant Attorney-General,* of counsel], for the State of New York.

*Thomas F. Conway [Thomas E. O'Brien* of counsel], for the Sisters of Mercy of the Diocese of Ogdensburg.

*Gillespie & O'Connor [George J. Gillespie, Jr.,* of counsel], for The Catholic Charities of the Archdiocese of New York.

*George B. Fergis,* for The Society of the Helpers of the Holy Souls of the City of New York and The Church of St. Ignatius Loyola.

FOLEY, S. In this proceeding for the construction of the will, the executors present certain questions concerning (a) the identity of the charitable beneficiaries intended to be the objects of the bounty of the testatrix; (b) whether certain charitable bequests are outright, or in trust with power to use only income; (c) the legal capacity of certain of the designated charitable beneficiaries to receive the shares of the estate bequeathed to them, and (d) whether a mandatory conversion of the real estate (not specifically devised) into personal property was effected by the terms of the will.

By the seventh clause of her will, Mrs. Genevieve Brady Macaulay directed her executors to divide her residuary estate into one hundred equal parts and bequeathed a specified number of such one-hundredths to designated persons or corporations. The residue approximates $3,400,000.

(1) By subdivision G of clause seventh, she bequeathed four of such parts " to the ' Order of the Sisters of Mercy,' of Hartford, Connecticut, of which my sister Mother Angeline is a member."

Extrinsic evidence as to the identity of the legatee and as to the law of Connecticut, which is the domicile of the order, was presented. Upon this evidence the surrogate finds that the testatrix intended that the bequest was to vest in the " Order of the Sisters of Mercy of the Roman Catholic Diocese of Hartford," in the State of Connecticut. It is that society with which Mother Angeline, the sister of the testatrix, was connected. The identification employed by Mrs. Macaulay in her will is thus substantiated by the proof.

The legatee, however, is an unincorporated religious association or society. Under the law of our State, an unincorporated association may not take a devise or bequest. It appears, however, from the testimony of an expert in the law of Connecticut, which is supported by the authorities and statutes of that State, that a

charitable donation to an unincorporated association is valid there. (Conn. Gen. Statutes [Rev. of 1930], §§ 4824, 4825, 5000; *American Bible Society* v. *Wetmore*, 17 Conn. 181; *Eccles* v. *Rhode Island Hospital Trust Co.*, 90 id. 592; 98 A. 129; *Brinsmade* v. *Beach*, 98 Conn. 322; 119 A. 233; *Mitchell* v. *Reeves*, 123 Conn. 549; 196 A. 785.)

In accordance with the rule recently restated by Presiding Justice SEARS in *Matter of Idem* (256 App. Div. 124; affd., 280 N. Y. 756), the legal right and capacity of the order to receive the legacy under the will of this testatrix have been established. In *Matter of Idem* (*supra*) the law of Ohio, which was the domiciliary State of the designated charity, permitted unincorporated associations of a charitable or religious character to take a legacy. The law òf the domicile of the recipient of the donation was held to apply and the validity of the bequest was sustained by our appellate courts.

The legacy here involved is directed to be paid to the mother bursar or other proper executive or financial officer of the society.

(2) A further question is presented as to a gift of two one-hundredths of the residuary estate to " His Eminence Cardinal Eugenio Pacelli, of Rome, Italy, * * * for the charitable or religious uses of such charitable or religious corporations as he may select, in his discretion either to transfer the principal to such corporation or corporations or to apply the income thereof to such uses and purposes." After the date of the execution of the will Cardinal Pacelli became Pope Pius XII. A testamentary gift to an individual, with directions to distribute the fund or property to charitable or religious purposes, is valid under the law of our State. The person selected by the testatrix, in some cases, is given direction to apply the fund to a broad and general charitable or religious purpose. Thus, in *Matter of Durbrow* (245 N. Y. 469, 473), the direction, expressed in the broadest manner, was to distribute the residue where the executor or executrix, " in his or her judgment shall consider it will be most effective in the advancement of Christ's Kingdom on earth." The gift was sustained as a valid charitable trust by the application of the liberal rules of construction relating to charitable gifts. It will be noted that in the *Durbrow* case (*supra*) no mention of any institution or corporation, or even a suggestion of á class of charitable corporations, was included in the will. There is stronger reason to sustain the legacy here, since the charitable and religious nature of the corporations designated as the objects of the trust was specifically defined. In this class of gifts the courts in recent years have without hesitancy given effect to the will. (*Matter of Cunningham*, 206 N. Y. 601; *Matter of Frasch*, 245 id. 174, affg. 216 App. Div. 797, affg. 125 Misc. 381;

*Matter of Hall,* 272 N. Y. 428, affg. 247 App. Div. 719, affg. 156 Misc. 841; *Matter of Dazian,* 167 id. 151; affd., 255 App. Div. 951.)

There is strong indication in the opinion of Chief Judge CULLEN in *Mount* v. *Tuttle* (183 N. Y. 358) that even if the trust was invalid under the law of the place of the domicile of the person named as trustee or quasi-trustee, it would be sustained if valid under the law of New York, as the State of residence of the maker of the will. However, that question is academic in the present proceeding because the evidence establishes that the law of the Vatican State, where the designated trustee was domiciled at the time of the death of the testatrix, recognizes and gives effect to the legality of a charitable trust of the nature of the one involved here. The gift may, therefore, be sustained under the rule that validity is granted by the law of the domicile of the recipient of the donation. (*Matter of Idem, supra; Matter of Feehan,* 135 Misc. 903.) The testimony of an expert on canon law demonstrated that the provisions of that law govern the validity and construction of bequests to citizens of the State of the Vatican; that persons competent to dispose of their property by will may make dispositions thereof in favor of religion and charity; that such dispositions shall be faithfully executed and that it shall be the duty of the ordinary to see that the purposes and intentions of the donor are obeyed. There has been received in evidence the treaty between the Vatican and Italy, signed and ratified at Rome in 1929. That treaty excludes any application of the Italian law to the territory included within the boundaries of the Vatican State. It recognizes its political independence. It specifically provides that the Cardinals resident in Rome, including those living outside of the Vatican, are citizens of the Vatican State.

The legacy to the present Pontiff contained in the will is, therefore, valid under the law of New York and under the law of his domicile. It may be paid to him, to be applied both as to principal and income to " such charitable or religious corporations as he may select " and in his discretion.

(3) In subdivision O of article seventh the testatrix bequeathed " to ' The Church of St. Ignatius Loyola, Inc.,' of New York, six (6) of such equal parts, in trust, nevertheless, to invest and reinvest the same and to collect, receive and apply the income and profits thereon to the uses and purposes of St. Ignatius Day Nursery, or to similar uses and purposes should it become desirable for any reason to discontinue the work of the Day Nursery." The Church of St. Ignatius Loyola is duly incorporated under the laws of the State of New York. It maintains a day nursery, known as St. Ignatius Day Nursery, for the care of children whose parents are

otherwise engaged during the day. The nursery is under the supervision of the representatives of the corporation. It is conducted as a religious and charitable institution connected with the church within the grant of authority of the statute under which the church was incorporated. The testamentary gift is clearly valid.

The amount of the legacy may be paid to the designated church. The surrogate holds that the testamentary gift is limited, however, by its terms to the use of the income only, and is further restricted to the purposes named in the will. (*St. Joseph's Hospital* v. *Bennett*, 281 N. Y. 115.)

(4) In subdivision P of article seventh the testatrix bequeathed " to the Trustees of the Brady Maternity Hospital, of Albany, New York, five (5) of such equal parts, in trust, nevertheless, to invest and reinvest the same and to collect, receive and apply the income and profits thereon for its general uses and purposes." There exists in the city of Albany a hospital known as the " Brady Maternity Hospital," but it possesses no independent legal existence. The Maternity Hospital and Infant Home of Albany is a corporation, organized in 1913 under the Membership Corporations Law. The by-laws of that corporation, adopted January 29, 1936, have been introduced in evidence. Article 1 provides that the institutions in the ownership and under the charge and direction of this corporation shall be known and designated, respectively, as the Albany Infant Home and the Brady Maternity Hospital. It has been shown by the extrinsic evidence that the hospital was established in 1914 by the family of the testatrix, and that she and other members always paid the operating deficits of the hospital, which amounted to about $25,000 a year. Her contributions were used, however, exclusively for the hospital as distinguished from the infant home.

It is plain that the testatrix intended to make the bequest to the parent corporation and not to the trustees as a shifting collection of individuals. (*Matter of Durand*, 194 N. Y. 477.) Since the Brady Maternity Hospital has no separate, independent legal existence, but is a branch of The Maternity Hospital and Infant Home of Albany, payment of the legacy may be made to the corporate parent. (*Kernochan* v. *Farmers' Loan & Trust Co.*, 187 App. Div. 668; affd., 227 N. Y. 658; *Matter of Tinker*, 157 Misc. 200.) The surrogate further holds that the testatrix limited the legatee to the use of income only to be applied to the general uses and purposes of the hospital. The principal of the fund must be maintained intact. (*St. Joseph's Hospital* v. *Bennett*, 281 N. Y. 115.)

(5) In subdivision R of article seventh, four shares were bequeathed " to the ' Religious of the Sacred Heart, Founded by Blessed Madeline Sophie Barat,' * * * to be applied to the uses of Manhattanville College." The educational institution, popularly known as " Manhattanville College," is a corporation whose correct legal name is " Manhattanville College of the Sacred Heart." The evidence shows that it is owned and operated by the Religious of the Sacred Heart, Founded by Blessed Madeline Sophie Barat. The testatrix had been a trustee of the college. It is clear from the will and the extrinsic evidence that the legatee intended is Manhattanville College of the Sacred Heart. (*Matter of Durand*, 194 N. Y. 477.) It is entitled to receive the legacy for its corporate uses and purposes. (*St. Joseph's Hospital* v. *Bennett*, 281 N. Y. 115.)

(6) Finally, the surrogate holds that the testatrix clearly intended a mandatory conversion by her executors of the realty (not specifically devised) into personalty. The value of that realty is about $100,000. It is relatively small when compared with the personal assets in the residuary estate, which are worth approximately $3,400,000. The realty was unproductive of net income at the date of the execution of the will and at the date of the death of Mrs. Macaulay and is at the present time. The proceeds of its sale will pass as part of the residuary estate. Other indications of an intent to convert arise out of the division of the residue into the small fractions of hundredths, with twenty-one designated residuary beneficiaries or groups of beneficiaries. Clearly the duty cast upon the executors by the terms of the will, to divide and distribute, contemplated a division in cash. The testatrix must have anticipated the difficulties incident to a distribution of the realty among the numerous legatees. I find, therefore, a clear expression of an imperative direction to the executors to sell the real estate, which effectuated an equitable conversion into personalty. (*Matter of Rowland*, 273 N. Y. 100, 108; *Matter of Jackson*, 258 id. 281; *Lawrence* v. *Littlefield*, 215 id. 561; *Matter of Dooper*, 125 Misc. 909; *Matter of Cooley*, 166 id. 740.)

Submit decree on notice construing the will accordingly.