William W. Serba, J.
This is a proceeding for a construction of the last will and testament of the decedent and of two codicils thereto. The court has considered, by submission herein, the petition for construction, and proofs of service thereof, the appearances of the parties herein, the answer of the Attorney-General of the State of New York, the affidavits of G. Sydney Shane, Esq., sworn to on the 4th day of October, 1971, the 15th day of November, 1971, the 5th day of June, 1973, the chronology of common stock, splits, distributions and mergers of George B. Harris, Jr., Esq., the affidavit of Paul E. Kilbane, sworn to on the 27th day of June, 1973, and all of the proceedings heretofore filed in this estate.
The decedent by his last will and testament dated January 3, 1956, made the following bequests in part:
‘ ‘ second. I give and bequeath * * * to St. Bonaventure University, St. Bonaventure, New York, the following stock; 100 shares Sinclair Oil stock, 100 shares Argo Oil stock, 100 shares Gulf Oil stock, in trust, nevertheless, the income from all of the above stocks to be the sole property of the St. Bonaventure University and to be used annually for assistance to needy students at said University, and some of the Priests at said University shall say at least one mass a month for Dennis Y. McCarthy and Philomena M. McCarthy, his wife, as long as said income from said stock is paid to the said University; to Christ the King Seminary, St. Bonaventure, New York, 100 shares of Texas Oil stock and 100 shares of Phillips Petroleum stock, in trust, nevertheless, the income from which is to be the sole property of Christ the King Seminary and some of the Priests at said Seminary shall say at least one mass a month for Dennis V. McCarthy and Philomena M. McCarthy, his wife, as long as said income from said stock is paid to the said Seminary; to St. Elizabeth’s Convent, Allegany, New York, 100 shares of Sunray oil stock; to the' St. Francis Hospital, Olean, New York, 100 shares Atlantic Refining stock.”
“third: I give and bequeath to St. Paul’s Abbey, Newton, New Jersey, 100 shares Midwest Oil stock, 100 shares Argo Company stock and 100 shares Sinclair Oil stock, in trust, nevertheless, the income from which is to be the sole property of St. Paul’s Abbey and some of the Priests at said St. Paul’s Abbey shall say at least one mass a month for Dennis Y. McCarthy and Philomena M, McCarthy, his wife, as long as *195 said income from said stock is paid to the said St. Paul’s Abbey; to the Norbertine Fathers, West DePere, Wisconsin, 100 shares Pure Oil stock, 100 shares Atlantic Refining stock and 100 shares Argo Oil stock, in trust, nevertheless, the income from which is to be the sole property of the Norbertine Fathers and some of the Priests at said Norbertine Fathers shall say at least one mass a month for Dennis V. McCarthy and Philomena M. McCarthy, his wife, as long as said income from said stock is paid to the said Norbertine Fathers.”
“ fourth. I give and bequeath to Loyola Seminary, Shrub Oak, New York, 100 shares Sinclair Oil stock, 100 shares Argo-Oil stock and 100 shares Sunray Oil stock, in trust, nevertheless, the income from which is to be the sole property of the Loyola Seminary and some of the priests at said Loyola Seminary shall say at least one mass a month for Dennis V. McCarthy and Philomena M. McCarthy, his wife, as long as said income from said stock is paid to the said Loyola Seminary; to St. Mary’s Seminary, Perryville, Missouri, 100 shares Midwest Oil stock, 100 shares Argo Oil stock, and 100 shares Atlantic Refining stock, in trust, nevertheless, the income of which is to be the solé property of St. Mary’s Seminary and some of the Priests at St. Mary’s Seminary shall say at least one mass a month for Dennis V. McCarthy and Philomena M. McCarthy, his wife, as long as said income from said stock is paid to the said St. Mary’s Seminary; to Home Missions of America, Inc., Glendale, Ohio, 100 shares Argo Oil stock and 100 shares Midwest Oil stock, in trust, nevertheless, the income from which is to be the sole property of Home Missions of America, Inc., and some of the Priests at said Home Missions of America, Inc., shall say at least one mass a month for Dennis V. McCarthy and Philomena M. McCarthy, his wife, as long as said income from said stock is paid to the said Home Missions of America, Inc.; to Salvatorian Seminary, St. Nazianz, Wisconsin, 100 shares Midwest Oil stock and 100 shares of Argo Oil stock, in trust, nevertheless, the income of which is to be the sole property of Salvatorian Seminary and some of the Priests at said Salvatorian Seminary shall say at least one mass a month for Dennis V. McCarthy and Philomena M. McCarthy, his wife, as long as the income from said stock is paid to the said Salvatorian Seminary; to Sacred Heart Monastery, Hales Corners, Wisconsin, 100 shares Argo Oil stock and 100 shares Midwest Oil stock, in trust, nevertheless, the income from which is to be the sole property of Sacred Heart Monastery, and the Priests at said Sacred Heart Monastery, shall say at least one mass *196 a month for Dennis V. McCarthy and Philomena M. McCarthy, his wife, as long as the income from said stock is paid to the Sacred Heart Monastery
The unusual language of the bequests set forth raises a number of legal questions. The first of these to determine, before the court can proceed, is that the,.will having been previously probated, is it now necessary nevertheless to cite distributees before proceeding with the construction? If the language of any of these gifts is capable of a construction as a condition subsequent with a right of re-entry or an estate upon limitation with a possibility of reverter, the question will arise as to whom the reversionary interest belongs. The construction of this question, if in doubt, would require citation to issue to all those having a likelihood of an interest affected by such interpretation. Is there, then, any possible interest of distributees by reason of such reversionary interest? The question arises because under early common law, continuing by interpretation after the adoption of the revised statutes, the right of re-entry accruing upon breach of a condition subsequent was neither devisable nor alienable. It accrued solely to the grantor, or to his heirs at law by representation. (Nicoll v. New York & Erie R. R. Co., 12 N. Y. 121; Upington v. Corrigan, 151 N. Y. 143; Fowler v. Coates, 201 N. Y. 257.) While the courts often used terminology of á possibility of reverter broadly to include an estate upon condition subsequent, estates actually upon' limitation to which such term should be properly related as distinguished from estates upon condition subsequent having a power of termination, were held from earliest time to be alienable and devisable under the revised statutes so far as the contingency would admit. Estates upon condition subsequent were not so held, but reverted to the grantor or his heirs. (See Clowe v. Seavey, 208 N. Y. 496 and cases cited therein; see, also, Nichols v. Haehn, 8 A D 2d 405.) The cases cited above deal with interests in real property. Under EPTL 1-2.15 the distinctions between real and personal property have been eliminated except where otherwise noted in the statute.
As to personal property before September 1, 1967, the rule, generally, was clearly to the effect that estates upon condition subsequent did not give rise to a right of re-entry upon the happening or nonhappening of the condition as would be the case with real property. (Sherman v. Richmond Hose Co., 230 N. Y. 462, 469; Matter of Arrowsmith, 162 App. Div. 623, affd, 213 N. Y. 704.) A right of re-entry following the *197 happening of a condition subsequent was not deemed an estate or an interest in real property, nor was it at common law an assignable chose in action. (People v. Wainright, 237 N. Y. 407; see, also, 53 ALR 2d 224.) "Without going further into the question at this time, at best it may be said that the law, as expounded by the text writers and as discussed in judicial opinions has been indicated to be in conflict and uncertainty as to the status of contingent futures, and their effects on party rights, both as to estates upon limitation and as to estates upon condition subsequent. (See Alan E. Shalov, Future Interests: Alienability and Possibility of Reverter, 45 Cornell L. Q. 373; Fausett v. Guisewhite, 16 A D 2d 82 for extensive discussions of this question.)
The Estates, Powers and Trusts Law has eliminated these fine distinctions by formally declaring both the possibility of reverter in a grant upon limitation and the right of reacquisition in a grant upon condition subsequent to be future estates (EPTL 6-4.5; EPTL 6-4,6; EPTL 6-3.2, subd. [a], par. [1], els. [B], [C]). Further, the Estates, Powers and Trusts Law has clarified these rights by making such interest descendible, devisable and alienable, in the same manner as estates in possession. To the extent that there may have been an unsettled question of the right of the remaindermen to take as against representatives (distributees) of the testator in any conceivable situation of a condition subsequent, the question is effectively eliminated (EPTL 6-5.1). The remaindermen under the will and codicils will take the otherwise undisposed of interest if the statute applies. The Court of Appeals has, moreover, found, even prior to the enactment of these sections of the Estates, Powers and Trusts Law, that reversionary rights, based upon grants on conditional limitations between the parties or their successors, cannot be extinguished by statute without the justification of protecting the intervening rights of third persons. Such action would deprive the reversioner of its property without due process of law and be unconstitutional. The court thus recognized the right of reverter as a property right (Board of Educ. of Cent. School Dist. No. 1 v. Miles, 15 N Y 2d 364; see, also, Practice Commentary of Professor I. Leo Grlasser, McKinney’s Cons. Laws of N. Y., Book 17B, EPTL 6-4.5, 6-4.6).
As to the application of the statute, the will here was executed in 1956, the first codicil in 1961 and the second codicil in 1965. The statute (EPTL) became effective September 1, 1967, confirming, as indicated, that such contingent reversionary *198 interests are future estates and alienable, and elminating the distinction between real and personal property. The testator died on the 5th day of November, 1969. The will and codicils speak as of the date of death of the testator and the statute applies. (Matter of Goldberg, 275 N. Y. 186; Matter of Schloessinger, 70 Misc 2d 206; 129 A. L. R. 855, 862.) There is ho possible interest in the distributees under these circumstances, as any interest will fall into the remainders set forth in the will and codicils.
Gifts to say masses are to be deemed charitable trusts. As such they are not void for indefiniteness. (Matter of Gorey, 227 N. Y. 141; EPTL 8-1.1, subd. [a]; Williams v. Williams, 8 N. Y. 525, 534, 535; Holland v. Alcock, 108 N. Y. 312; Matter of McDowell, 217 N. Y. 454; Matter of Yadach, 5 A D 2d 355; Matter of Liebeck, 9 Misc 2d 958; Matter of Dobbins, 206 Misc. 64.)
In the series of gifts herein made for the saying of masses and for other restrictive purposes, the gifts are1 all directed by the testator to be used for the beneficial objective for which each religious and charitable organization has been formed. This is so whether the income is allocated to the charitable corporation itself, to the purpose of the charity, or to the benefit of deceased souls and the incidental support of the priests in the saying of masses who perform services in the 'functions of the charitable trustees designated. It is urged by counsel for the executor that no trust has been created but that a distinction between trustee and donee should be made and -that the gifts should be deemed outright and the conditions precatory only. (See 7 N. Y. Jur., Charities, § 62.) It is noted, however, that EPTL 8-1.1 and its predecessor, sections, section 113 of the Real Property Law and section 12 of the Personal Property Law, in relating to religious and charitable purposes, refer to dispositions of property for religious, charitable, educational or benevolent purposes and speaks of trustees and persons holding title thereto. It is not limited to true trusts in the formal legal sense alone. The sections of statute vest certain responsibilities in the Supreme Court and the Surrogate’s Court and impose certain duties upon the Attorney-General in relation thereto. Significant case law revolves around the leading case on the subject, St. Joseph’s Hosp. v. Bennett (281 N. Y. 115), wherein it was held that a gift to a charitable corporation with a direction and restriction that it be used for a particular purpose consistent with the corporate purposes of the donee, while not creating a *199 legal trust, does create a legally enforceable obligation imposed upon the donee to carry out the restrictions on the gift.
The decision holds that such a gift, while not a trust in the legal sense, is nevertheless valid and that equity will furnish protection to the conditions established by the donor, in that the Attorney-General may maintain a suit to compel the property to be held for the charitable purpose for which it was given to the corporation. Whatever the theoretical difficulties of this rationale, pointed out in the discussion in 130 A. L. R. 1092, 1115, the effect is clear that the gifts are valid and that reasonable restrictions on their uses are enforceable. The fact that words of trust are used does not necessarily compel a trust construction where there is no separate trustee designated and where the intent is clear from the language of the will that the testator intended to frame a series of gifts upon restricted use to charitable corporations. Such interpretation is entirely consistent with the construction of the law set forth in St. Joseph’s Hosp. v. Bennett (281 N. Y. 115, supra). (See Matter of Borden, 142 Misc. 44, affd. 236 App. Div. 753; Matter of Mott, 9 Misc 2d 1018; Matter of James, 22 Misc 2d 1062, 1067; Matter of Macaulay, 173 Misc. 887; Lefkowitz v. Cornell Univ., 35 A D 2d 166, affd. 28 N Y 2d 876.) The duties of the Attorney-General discussed throughout the cases cited herein are imposed by statute in EPTL 8-1.1 (subd. [f]) and EPTL 8-1.4. The court therefore construes the bequests not as formal legal trusts but as gifts upon restriction consistent with the nature of the gifts in the St. Joseph’s Hospital (281 N. Y. 115, supra) case.
There has been no indication from any designated beneficiary of any reluctance or inability at this time to comply with the restrictions placed upon gifts by the decedent and a need for construction as to speculative questions of future failures or impossibility of future performance is not reached in this proceeding. Such problems will obviously raise individual questions for future consideration when and if they arise. The doctrine of cy pres has been applied in appropriate cases (Matter of Lawless, 194 Misc. 844, affd. 277 App. Div. 1045; Matter of Jeglich, 14 Misc 2d 982). Where appropriate, and depending on the circumstances, multiple charitable purposes may be weighed together, depending on all the circumstances to determine on the facts of a particular case the ultimate intention of the testator (Matter of Scott, 8 N Y 2d 419). The decision on such issues is not presently properly before the *200 court. (See, also, Changing Concepts and Cy Pres, 44 Cornell L. Q. 382; 7 N. Y. Jur., Charities, § 87.)
It appears that several of the bequests have been made to improperly designated unincorporated groups or associations, the status of which has, in each case, been clarified by supplementary proof by way of filed affidavits before the court. These will be discussed separately.
Christ the King Seminary is the legatee of a gift in the nature of a trust, one of those discussed above, in paragraph second of the will, the residuary legatee of paragraph eighth of the last will and testament, and a 25% or % residuary legatee in paragraph twelfth of the first codicil. Christ the King Seminary, as it is commonly known, is not a legal entity but is the school of theology of St. Bonaventure University at Allegany,' New York. St. Bonaventure University is an educational corporation organized under the laws of the State of New York. The bequests to Christ the King Seminary shall be paid to St. Bonaventure University to be applied by its officers and trustees (however the same may be designated in accordaneé with the authority of the Regents of the State of New York), consistent with the will and codicils of the decedent, duly admitted to probate, and with this memorandum, to the use and benefit of the said school of theology of St. Bonaventure University known as Christ the King Seminary.
“ St. Elizabeth’s Convent ”, legatee referred to in paragraph second of the decedent’s will, which the court finds is the same organization referred to in the residuary bequest in paragraph twelfth of the first codicil as “ St. Elizabeth’s ”, was, until approximately 10 years ago the motherhouse of the Franciscan Sisters of Allegany, New York, Inc. ,St. Elizabeth’s Convent is not now, and has never been a separate legal entity. It has always been the property of, operated by, and controlled by the Franciscan Sisters of Allegany, New York, Inc., and its pre-‘ decessors in title. The building known as “St. Elizabeth Convent ’ ’ was devoted in part to the conduct of a girls ’ academy, whose pupils were taught by the Franciscan Sisters. At the time of the construction of the present motherhouse at Allegany, New York, St. Elizabeth’s Convent was abandoned as a girls’ academy and has since been devoted principally to housing and care of aged women under the management and supervision of the Franciscan Sisters. The premises are known as ¡St. Elizabeth’s Residence. While the misnomer may apply as to legal entity, it is obvious from the dates of the will and codicil and from this history found by the court, that the *201 decedent was fully cognizant of these changes and his intent is thereby clear. The bequests will be paid over to the officers and trustees of the Franciscan Sisters of Allegany, New York, Inc., to be applied to the use and benefit of the St. Elizabeth’s Eesidence, consistent with the will and codicil of the decedent and with this memorandum.
In paragraph fourth there is the sum of $500 bequeathed to “ Missionary Poor Chares of St. Bonaventure, New York The court finds that the gift to Missionary Poor Chares is intended to be given to an order of nuns commonly known as the “ Missionary Poor Chares of the Immaculate Conception ”, also referred to as the “Poor Clares” who perform housekeeping and kitchen work at Christ the King Seminary. They are part of a religious order known as ‘ ‘ The Province of Immaculate Conception ”, incorporated as a religious corporation principally located at Box 3026, West Patterson, New Jersey. Such sum should be paid to the religious corporation to be expended for the use and benefit of the Missionary Poor Clares, so-called, at Christ the King Seminary.
In the last will and testament of decedent he gave in paragraphs second, third and fourth to St. Bonaventure University and to seven other legatees certain oil stocks upon various terms and conditions as set forth above. In the first codicil, December 19, 1961, decedent provided as follows:
“first: inasmuch as I have sold all of my Argo Oil stock since the making of said Last Will and Testament and desire to substitute to the beneficiaries of my Will to whom I bequeathed Argo Oil stock certain other oil stocks.
“second: I give and bequeath unto St. Bonaventure University, St. Bonaventure, New York, 100 shares of Gulf Oil stock, in lieu and in place of the 100 shares of Argo Oil stock mentioned in Paragraph ‘ second ’ of my said Last Will and Testament.
“third: I give and bequeath to st. Paul’s abbey, Newton, New Jersey, 100 shares of Texaco Oil stock, in lieu and in place of the 100 shares of Argo Oil stock mentioned in Paragraph ‘ third ’ of my said Last Will and Testament.
“ fourth: I give and bequeath unto norbertine fathers, West DePere, Wisconsin, 100 shares of Gulf Oil stock, in lieu and in place of the 100 shares of Argo Oil stock mentioned in Paragraph ‘ third ’ of my said Last Will and Testament.
“ fifth: I give and bequeath to loyola seminary, Shrub Oak, New York, 100 shares of Texaco Oil stock, in lieu and in place *202 of the 100 shares of Argo Oil stock mentioned in Paragraph ‘ fourth ’ of my said Last Will and Testament.
“ sixth: I give and bequeath unto sr. mart’s seminary, Perry-ville, Missouri, 100 shares of Gulf Oil stock, in lieu and in place of the 100 shares of Argo Oil stock mentioned in Paragraph ‘ fourth ’ of my said Last Will and Testament.
“ seventh: I give and bequeath unto home missions of America, Inc., Glendale, Ohio, 100 shares of Standard Oil of California stock, in lieu and in place of the 100 shares of Argo Oil stock mentioned in Paragraph 1 fourth ’ of my said Last Will and Testament.
‘1 eighth : I give and bequeath unto salvatorian seminary, St. Nazianz, Wisconsin, 100 shares of Ohio Oil stock, in lieu and in place of the 100 shares of Argo Oil stock mentioned in Paragraph 1 fourth ’ of my said Last Will and Testament.
' “ ninth : I give and bequeath unto sacred heart monastery, Hales Corners, Wisconsin, 100 shares of Ohio Oil stock, in lieu and in place of the 100 shares of Argo Oil stock mentioned - in Paragraph 1 fourth ’ of my said Last Will and Testament.”
Similar changes are made in the second codicil.
The question is raised as to whether, in the case of these bequests, the substituted gifts, bearing no restrictions, are new, independent bequests, free of restrictions. In view of the fact that every legatee had, in addition to the Argo Oil stock, other shares of common stock in various .oil companies which remained unchanged, the court must conclude that the substitutions, only as to the Argo stock, were intended merely to replace the stock sold and not to constitute additional bequests. The gifts provided for in the codicils are deemed substitutions in all respects, bound by the original restrictions and conditions and any constructions thereon which are the subject of this decision.
In the second codicil, dated November 8, 1965, it is provided in part as follows: “ thirteenth: T give and bequeath unto the Mother Superior of St. Francis Hospital the sum of One Thousand Dollars ($1,000.00.) in trust however. The sum of One Hundred Dollars ($100.00) of said bequest to be given to her each Christmas for 10 years.” St. Francis Hospital, Olean, New York, is a membership corporation (not-for-profit corporation) organized under the laws of the State of New York, its certificate of incorporation having been filed in the office of the Clerk of Cattaraugus County, New York, on December 12, 1936. The said hospital is operated by and its affairs conducted by the Franciscan Sisters of Allegany, New York, *203 Inc., a religious order of nuns whose motherhouse is located in the Village of Allegany, New York, which operated as a membership corporation under the name of the Sisters of the Third Order of St. Francis, Province of the Holy Name, Motherhouse, Allegany, New York. On the 11th day of May, 1971, there was filed with the Department of State, State of New York, a certificate changing thé name of the Sisters of the Third Order of St. Francis, Province of the Holy Name, Motherhouse, Allegany, New York, to Franciscan Sisters of Allegany, New York, Inc. The bequest should be paid to the Mother .Superior of the Franciscan Sisters of Allegany, New York, Inc., as trustee, and as successor to the mother superior of the Sisters of the Third Order of St. Francis, Province of the Holy Name, Motherhouse, Allegany, New York. The sum of $100 should be paid out of such bequest annually to the person who was, is, or will be the mother superior in each year managing the affairs of St. Francis Hospital, beginning with Christmas, 1969 and until Christmas, 1978. Such bequest must be deemed a gift in trust for the religious and charitable purpose of aiding in the support of the management of St. Francis Hospital, with the mother superior of the managing order of nuns as trustee. (See Matter of Liebeck, 9 Misc 2d 958; Matter of Connolly, 40 Misc 2d 673.)
The cy pres applications of bequests to unincorporated associations with restrictions imposed as hereinabove provided have been made in accordance with principles laid down in the following court decisions: (Matter of Lawless, 194 Misc. 844, affd. 277 App. Div. 1045, supra; Matter of Dobbins, 206 Misc. 64; Matter of Kittinger, 36 Misc 2d 385; Matter of Macauley, 173 Misc. 887; Kernochan v. Farmers Loan & Trust Co., 187 App. Div. 668, affd. 227 N. Y. 658; St. Joseph’s Hosp. v. Bennett, 281 N. Y. 115, supra; Matter of Cromwell, 197 Misc. 734; Matter of Jolson, 202 Misc. 907; Matter of Rupprecht, 271 App. Div. 376, affd. 297 N. Y. 462; Matter of Buttner, 243 N. Y. 1; Matter of O’Connor, 45 Misc 2d 1033; Matter of Isbell, 1 App. Div. 158; Prudential Ins. Co. v. New York Guild for Jewish Blind, 252 App. Div. 493; Matter of Martin, 32 A D 2d 849; Matter of Liebeck, 9 Misc 2d 958, supra; Matter of Connelly, 40 Misc 2d 673, supra). (See, also, EPTL 8-1.1, subds. [c], [d].)
In the paragraphs second, third" and fourth of the last will and testament of the decedent there are numerous bequests of varying numbers of shares of common stocks of different corporations. As hereafter indicated, some of these shares of stocks have been involved in numerical increases, name changes *204 and mergers. The question involved is whether the shares go to the designated devisees or to the residuary legatees. The court notes that in the first codicil the testator recited, ‘ ‘ first : Inasmuch as I have sold all of my Argo Oil stock since the making of said Last Will and Testament and desire to substitute to the beneficiaries of my Will to whom I bequeathed Argo Oil stock certain other oil'stocks ”. He then proceeded to make substitutions of stocks in eight previous gifts of other shares of common stocks in oil corporations, to make two bequests of cash, and to change his residuary legatees. In the second codicil the testator made a further substitution of 100 shares of the preferred stock of Union Oil of California to the Norbertine Fathers, West DePere, Wisconsin, in lieu of 100 shares of Pure Oil stock, and substituted 100 shares of Marathon Oil stock in lieu of 100 shares of Ohio Oil stock in each bequest previously made to Salvatorian Seminary, and Sacred Heart Monastery. Qhio Oil Company had changed its name to Marathon Oil Company on August 1, 1962. In Matter of Howe (15 A D 2d 396, affd. 12 N Y 2d 870) it was said in the Appellate Division decision by Justice Henry, speaking for the court, (p. 398), quoting Matter of Hicks (272 App. Div. 594, 597, affd. 297 N. Y. 924), that the cardinal rule is to carry out the intention of - the testator as derived from the will, and that a very slight indication of an intention to give shares in testator’s ownership at the time of making of a will is sufficient to make the legacy specific. The recitation at the time of the making of the first codicil, the action of updating the change of name in the second codicil in reference to Ohio Oil, and the fact that the testator at the time of his death owned at least as much stock with accrued accumulations in all of the numerous specific bequests, all are evidence of intention to give specifically owned stock at the time of the execution of the will and of each republication by codicil execution. Under the circumstances, and on the ruling of Howe (supra), all splits (but not dividends before death), will pass to the named beneficiaries following the will or codicils, or the death of the testator as the case may be, and will go to the persons named and not to the residuary legatees. (See, also, Matter of Griffing, 11 A D 2d 709, affd. 9 N Y 2d 919.) As to changes of ñame and mergers, the successor securities, as substitutions therefor, will similarly follow the bequest. In this regard the court notes the following stock splits, name changes and mergers: Texas Corp. changed its name to Texaco, Inc., on May 1, 1959 and split two for one to holders of record on May 4, 1956; Phillips *205 Petroleum split two for one to holders of record on June 18, 1956; Gulf Oil Corporation split three for one to holders of record on November 18, 1959; Texaco, Inc., again split two for one to holders of record on July 19, 1961; Marathon Oil Company split two for one to holders of record on December 29,1967; Cuba National Bank merged with the Citizens National Bank and Trust Company and received 11 shares for 1 of the former corporation; Gulf Oil Corporation again split two for one to holders of record on September 18, 1968; Sinclair Oil Corporation exchanged one share of Sinclair common stock for one share of Atlantic Richfield $2.80 convertible preferred plus % of one share of Atlantic Richfield common on March 14, 1969; Phillips Petroleum Company split two for one to holders of record on May 10, 1969; Texaco, Inc. again split two for one to holders of record on July 10, 1969. The testator died on October 5, 1969 and the Citizens National Bank and Trust Company split 2% for 1 on December 31, 1969.